**UNITED STATES of America, Appellee,**

v.

**William MYLETT, Robert Allen, Robert Flanagan, Thomas Flanagan and Albert Brody, Defendants,**

**Joseph Cusimano, Defendant–Appellant.**

**No. 2313, Docket 96–1309.**

United States Court of Appeals, Second Circuit.

Argued Aug. 8, 1996.

Decided Oct. 4, 1996.

Karen Patton Seymour, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., Michael Gertzman, Marian W. Payson, Asst. U.S. Attys., on the brief), for Appellee.

Anthony DiSarro Winston & Strawn, New York City (Daniel K. Webb, Matthias A. Lydon, on the brief), for Defendant–Appellant.

Before: MESKILL, CALABRESI, and PARKER, Circuit Judges.

CALABRESI, Circuit Judge:

Joseph Cusimano appeals from a final judgment and sentence entered on May 16, 1996, in the United States District Court for the Southern District of New York following his conviction for trading in violation of Rule 10b–5 of the Securities Exchange Act of 1934. 15 U.S.C. § 78n(e); 17 C.F.R. § 240.10b–5 (1988). Cusimano contends that there was insufficient evidence to support a finding of insider trading, and that the district court erred as a matter of law in finding that he committed perjury. We reject both contentions and affirm the district court.

## I. BACKGROUND

On November 8, 1990, *The Wall Street Journal* stated in an article that, according to unnamed sources, AT & T and NCR Corporation were discussing ways to integrate their businesses. The article indicated that the form that this combination might take was unclear, but it gave an acquisition of NCR by AT & T, and a spinoff of AT & T's computer business to NCR, as possible examples. The article also noted that the *Journal*'s sources had cautioned that the talks between the two companies might well come to nothing, since AT & T had repeatedly shown interest in acquiring various computer makers over the past years to no effect.

On the same day, Charles Brumfield, a Vice President of Labor Relations at AT & T, called his friend Joseph Cusimano. Brumfield had come to believe that AT & T was going to acquire NCR based on information he obtained through the course of his employment. (Brumfield had conducted a feasibility study relating to the merger of AT & T with an unnamed company that had the same vital statistics as NCR. Moreover, Brumfield's supervisor, William Ketchum, had brought the *Journal* article to his attention that morning and, although he did not usually give such warnings, had expressly cautioned Brumfield not to discuss it.) Brumfield therefore told Cusimano that he believed that the contents of the newspaper article were true, and that "AT & T was going to be attempting to acquire NCR." Cusimano thereafter made a series of trades in NCR securities on November 9, November 12, and November 15–20, 1990. AT & T did not publicly announce its friendly offer to acquire NCR until December 2, 1990. On December 3, 1990, the stock of NCR increased $24.75 per share to a closing price of $81.50 per share.

On August 18, 1995, Cusimano pleaded guilty to insider trading for the purchases he made between November 15–20, but not for the trades he had made on November 9 and November 12. On October 20, 1995, the district court issued an opinion and order holding, *inter alia*, that the November 9 and November 12 trades should be included in calculating Cusimano's offense and fine level and that Cusimano's sentence should be further enhanced for perjury. Cusimano appeals. Since his appeal turns on factual findings, we review for clear error. *See United States v. Rivera*, 971 F.2d 876, 892 (2d Cir. 1992) (citation omitted).

## II. Discussion

### A. *Insider Trading*

■ Cusimano's first contention is that the district court erred in finding that his trades on November 9 and November 12 constituted insider trading. Under the misappropriation theory of Rule 10b–5, insider trading occurs whenever a person trades while in knowing possession of misappropriated and material non-public information. *See United States v. Chestman*, 947 F.2d 551, 566, 570 (2d Cir. 1991), *cert. denied*, 503 U.S. 1004, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992). Cusimano maintains that the district court erred in finding (1) that the information was non-public; (2) that the information was material; (3) that the information was misappropriated; and (4) that he acted with scienter.

#### 1. *Non-public Nature of the Information*

■ The district court did not err in its holding that the information imparted by Brumfield to Cusimano was non-public. To constitute non-public information under the act, information must be specific and more private than general rumor. *See SEC v. Monarch Fund*, 608 F.2d 938, 942–43 (2d Cir.1979). While the district court acknowledged that papers such as *The Wall Street Journal* had speculated, on or before November 8, 1990, that AT & T might acquire NCR, it also noted that Brumfield imparted information "that was substantially more specific than that in the newspaper." The court pointed out that while the newspaper reports listed an attempted acquisition as one possibility among many, Brumfield's statement to Cusimano that "AT & T was going to attempt to acquire NCR" was both more specific and more certain than any reports in the press.

The defendant contends that Brumfield's conclusion that an acquisition would occur was not supported by the non-public facts at his disposal. These facts, he argues, could just as easily have supported other conclusions, including the one that "nothing" would happen. We disagree. Brumfield's conclusion was supported, for example, by the non-public facts (1) that he had been asked to do a study of the feasibility of integrating AT & T's workforce with that of a computer company with the same vital statistics as NCR, and (2) that Ketchum warned Brumfield not to speculate with others about a press report that discussed the possibility that AT & T and NCR might combine (and Ketchum was not wont to give Brumfield such warnings). At the very least, these non-public facts would make a reasonable investor less likely to believe that "nothing" would happen.

That by itself would be information with significant market value. Moreover, the facts might well have pointed more specifically toward an acquisition than did the general newspaper article to a Vice President of the company, who would know how to place them in their proper context. *Cf. Monarch Fund,* 608 F.2d at 941 ("Because of their positions, insiders know when they have the kind of knowledge that is likely to affect the value of stock.") (citations omitted).

We do not today hold that any predictions made by an insider can constitute the basis for insider trading simply because a tippee relies upon them and their source, and they subsequently come true. It may well be that insider trading has not occurred, for example, in situations in which an insider has made categorical statements that are completely without foundation and these are used successfully by a trader. We need go nowhere near such an extreme holding, for here the statement made by the insider was qualified, supported, and credible. Brumfield did not state that AT & T *would* acquire NCR. He had no real basis for such a statement. He did say, on the basis of nonpublic data, that he *believed* that what he read in the paper was true, and that AT & T was going to be *attempting* to acquire NCR. He had private information that would support both of these remarks, and both of them were of great value to a would-be trader.

### 2. Materiality

■ The trial court did not err in finding that the information imparted by Brumfield was material. When an event is "contingent and speculative," the materiality of information regarding that event depends "upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic Inc. v. Levinson,* 485 U.S. 224, 238, 108 S.Ct. 978, 987, 99 L.Ed.2d 194 (1988) (citation and internal quotation marks omitted). The district court held that Brumfield "conveyed information that indicated a much higher level of probability than was publicly available concerning an event of great magnitude in the corporate life of NCR."

■ The defendant maintains that the district court was wrong about both the probability and the magnitude of the event. He claims that the probability of the merger before November 8 was low because "there is no evidence that, prior to November 12, senior management of AT & T was in favor of an acquisition of NCR." This is belied by the record. Prior to November 12, AT & T had hired an investment bank, outside counsel, and accountants to formulate an acquisition plan; AT & T management had conducted integration plans for an acquisition; and AT & T management teams were conducting discussions relating to an NCR bid. The defendant also avers that the magnitude of the event was not high. He does not show, however, why a $6 billion acquisition should not be considered an event of great magnitude. He contends instead that magnitude depends not only on the size of the deal but also on whether the market has already internalized the information with respect to the merger at the time of the trade. But even under this measure, the sharp jump in NCR's stock price after a formal acquisition announcement was made suffices to support a finding that the event in this case was one of major magnitude.

### 3. Misappropriation

■ The district court correctly found that Cusimano misappropriated information. Under Rule 10b–5, misappropriation occurs when a person acquires "material non-public information in breach of a fiduciary duty or similar relationship of trust and confidence and uses that information in a securities transaction." *Chestman,* 947 F.2d at 566. As shown above, the information in this case was both non-public and material. Therefore, the only additional showing needed to establish misappropriation is that the information was acquired through a breach of a relationship of trust and confidence.

■ Cusimano acquired his information precisely in this way for he knew that his source, Brumfield, held a position of trust and confidence in AT & T. Defendant nevertheless contends that there was no misappropriation because Brumfield concluded through his own ingenuity that AT & T

would acquire NCR. He was never told about the acquisition and did no more than piece together evidence obtained while working for AT & T. In *SEC v. Materia,* 745 F.2d 197, 201 (2d Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985), however, we upheld a trial court's finding of misappropriation where the defendant traded on information that he pieced together through the course of his employment. The defendant's objection therefore must fail.

### 4. Scienter

■ Finally, the district court did not err in finding that Cusimano acted with scienter. Rule 10b–5 requires that the defendant subjectively believe that the information received was obtained in breach of a fiduciary duty. *See Chestman,* 947 F.2d at 570. Such belief may, however, be shown by circumstantial evidence. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390–91 n. 30, 103 S.Ct. 683, 691–92 n. 30, 74 L.Ed.2d 548 (1983). Cusimano knew that he had obtained information from Brumfield. He argues that this does not show scienter because "nothing about Brumfield's position as a labor negotiator would logically give rise to the inference" that he was disclosing inside information. Because Cusimano knew that Brumfield was a Vice President of AT & T, this contention is meritless.

### B. Obstruction of Justice Through Perjury

■ The defendant also appeals the trial court's sentencing enhancement for obstruction of justice through perjury. "A sentence enhancement for perjury is warranted when a defendant testifying under oath gives false testimony concerning a material matter with the willful intent to provide false testimony...." *United States v. Cawley,* 48 F.3d 90, 94 (2d Cir.1995) (citation and internal quotation marks omitted). Any ambiguity regarding the testimony must be evaluated in the light most favorable to the defendant. *See United States v. Cunavelis,* 969 F.2d 1419, 1423 (2d Cir.1992). But such an enhancement is mandatory once its factual predicates have been established. *United States v. Friedman,* 998 F.2d 53, 58 (2d Cir.1993). The trial court found that Cusimano lied in order to cover up the fact that he traded on inside information. This determination is supported by uncontested findings, such as the fact that Cusimano stated that his November 12 trades were inspired by a TV show that he watched at lunchtime, while the record shows that his trades began early that morning. Defendant contends that even if he lied, those lies did not concern a material matter. That contention is without merit. If Cusimano's false testimony had been credited, it would have provided an alternative explanation for his trades. This in turn would have cast doubt on whether he knowingly acted on inside information, which is a required element of insider trading. Defendant's lies thus were clearly material.

### III. CONCLUSION

Because Cusimano traded on November 9 and 12 while in knowing possession of misappropriated and material non-public information, the district court correctly found that he engaged in insider trading on those two dates. Moreover, because Cusimano willfully gave false testimony about a material matter under oath, the court did not err in enhancing his sentence for obstruction of justice through perjury.

We affirm the judgment of the district court.

MESKILL, Circuit Judge, concurring in part and dissenting in part:

I concur in most of the majority's opinion. However, I cannot agree that Cusimano's trades on November 9 and 12 were criminal acts that should have been included in calculating his offense and fine level.

A person violates Rule 10b–5 when he or she "misappropriates material nonpublic information in breach of a fiduciary duty or similar relationship of trust and confidence and uses that information in a securities transaction." *United States v. Teicher,* 987 F.2d 112, 119 (2d Cir.1993) (quoting *United States v. Chestman,* 947 F.2d 551, 556 (2d Cir.) (in banc), *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1759, 118 L.Ed.2d 422 (1992)), *cert.*

*denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). Persons who trade while in knowing possession of such information similarly violate Rule 10b–5.

It follows that if none of the information that is allegedly "inside" information meets all of the elements (namely, material and nonpublic), there can be no violation. The flaw in the majority's reasoning on the November 9 and 12 trades, is its attribution of materiality to Brumfield's predictions that were based on false or thoroughly inconclusive information. Thus, I believe, that even though some of the information relayed by Brumfield to Cusimano was material, and some was non-public, none was both. Therefore, I respectfully dissent as to those trades.

The majority's first theory is that Brumfield added to the information already available in the *Wall Street Journal.* However, the extra information—that the transaction definitely was going to happen and that it was going to be an acquisition—did not exist at the time Brumfield tipped Cusimano. In other words, Brumfield could not state correctly that the acquisition attempt was going to happen at all, because according to Blaine Davis, the head of AT & T's Strategic Development group, the only government witness on this event, AT & T had not yet made that decision. The exploratory steps taken by AT & T prior to deciding whether to make a bid for NCR were just that, exploratory business inquiries before making an important business decision.

The majority says: "We do not today hold that any predictions made by an insider can constitute the basis for insider trading simply because a tippee relies upon them and their source, and they subsequently come true." I fear that, by implication, they may have done just that.

I would vacate the judgment of conviction as to Cusimano's sentence and remand for resentencing.