SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

Hugh THRASHER, John H. Anderson, Ezra Chammah, Stanley Elbaum, Scott Forbes, Guillermo Gomez a/k/a/ William Gomez, Stephen V.R. Goodhue, Jr. Ira Gorman, Gorman Commodities & Securities, Inc., Jonathan S. Hirsh, Donald Kuznetsky, Darrell Sandy Marsh, Jack P. Marsh, Michael R. Newman, Roger K. Odwak, Angelo Petrotto, Lee Rosenblatt, Robert Sacks, Jeffrey A. Sanker, David Schaen, Leonard Schaen, Julian Schor, Gregg R. Shawzin, and Mark R. Shawzin, Defendants.

No. 92 CIV 6987 JFK.

United States District Court, S.D. New York.

March 28, 2001.

United States Securities and Exchange Commission, Wayne M. Carlin, Regional Administrator, New York City (Edwin M. Schmidt, Deputy Regional Director, Helene Glotzer, of counsel), for Plaintiff.

Stillman & Friedman, P.C., New York City (John B. Harris, of counsel), for Defendant.

Nagler and Associates, Los Angeles, CA (Lawrence H. Nagler, Robert M. Zabb, of counsel), for Defendant Jonathan Hirsh.

## OPINION AND ORDER

KEENAN, District Judge.

Before the Court are Plaintiff Securities and Exchange Commission's Motion for Partial Summary Judgment (which Defendants Hugh Thrasher and Jonathan Hirsh oppose) and Defendant Jonathan Hirsh's Cross–Motion for Summary Judgment or, in the alternative, Partial Summary Judgment. For the reasons outlined below, both motions are denied in their entirety.

## BACKGROUND

The Court assumes familiarity with its earlier opinions in this case, and provides below only a rudimentary recitation of the facts as needed for this decision.

Plaintiff Securities and Exchange Commission ("SEC") has brought this civil enforcement action alleging a nationwide insider trading scheme by persons who possessed material, nonpublic information concerning the proposed acquisition of Motel 6, L.P. ("Motel 6"), a Dallas-based national chain of owner-operated economy motels, by Accor, S.A. ("Accor"), a French-based company. The Amended Complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)], and Rules 10b–5 and 14e–3 promulgated thereunder [17 C.F.R. §§ 240.10b–5 and 240.14e–3]. In short, the SEC alleges that in 1990 Defendant Hugh Thrasher ("Thrasher"), then an executive vice president of Motel 6, conveyed material nonpublic information to his friend, Carl Harris ("Harris"), concerning a tender offer for Motel 6 by Accor; through Harris, who is now deceased, this information was allegedly leaked to numerous individuals across the country.

In January, 1990, Accor, a French hotel company, began discussions with representatives of Motel 6's majority shareholder, Kohlberg, Kravis, Roberts & Co ("KKR") regarding a possible acquisition of Motel 6 by Accor. Thrasher first learned about Accor's interest in Motel 6 at a meeting on May 21, 1990. The SEC alleges that Thrasher told Harris about Accor's interest in acquiring Motel 6 in order to make a gift of any profits Harris might earn by using the information.[1]

---

1. The two men were good friends, and Thrasher had been supporting the dying Harris, giving him gifts and sending him $1000 per month. Thrasher Tr. at 113–14, 171–72, 227–28.

The following weekend, Harris, who was dying of AIDS, allegedly concocted a scheme whereby he and others could capitalize on the information provided by Thrasher. Jeffrey A. Sanker ("Sanker"), Harris' roommate, learned about the potential deal from Harris, and he, too, allegedly sought to make money by disclosing information about the deal to others who had money to invest and receiving kickbacks from his tippees. Sanker met with one of his tippees, Defendant Jonathan S. Hirsh ("Hirsh") and allegedly told him that he had inside information regarding an upcoming tender offer. He initially told Hirsh that his source in the target company was Harris' father, and revealed to Hirsh the name of the target company and the anticipated sale price. Sanker then asked his broker, Roger K. Odwak ("Odwak") of the New York brokerage firm Bear, Stearns and Co. Inc., to research Motel 6; Odwak discovered that there were considerable rumors pegging Motel 6 as a takeover target. He also discovered that there was no "Harris" on the Motel 6 board, indicating that Sanker's statement that the tip came from Harris' father was false. Sanker eventually invested $220,000 in Motel 6 securities and call options, both individually and with a friend, Lee Rosenblatt ("Rosenblatt"), and together they earned approximately $360,000 in profits. While the negotiations between Accor and Motel 6 did not always proceed smoothly, (the deal was actually called off at one point), a deal between Accor and Motel 6 was finalized and made public on July 12, 1990, six weeks after Thrasher first tipped Harris that a deal was imminent.

### SEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The SEC now seeks partial summary judgment not on particular claims charged but on elements of those claims, arguing that if the Court settles certain issues before trial "the jury will be free to focus on the only true issues of material fact in this case ... thereby eliminating the need to focus on the historical aspects of the tender offer negotiations." Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Sum. J. at 8. The SEC seeks to establish:

> "(i) that, as of May 21, 1990, Accor had taken 'substantial steps'-as that term is used in Exchange Act Rule 14e-3-to commence a tender offer for Motel 6 units (hereinafter "shares"); (ii) that, as of May 21, 1990, Thrasher possessed material, nonpublic information concerning the proposed bid for Motel 6 by Accor; and (iii) that Thrasher, as executive vice president of Motel 6, had a duty not to disclose information regarding the proposed tender offer for Motel 6 to Carl Harris."

*Id.* at 8. Defendants Thrasher and Hirsh argue, among other things, that Plaintiff's motion is not proper, since it requests disposition of elements of a claim rather than judgment on a claim. This Court agrees. The plain language of Federal Rule of Civil Procedure 56 indicates that it is not appropriate to use summary judgment as a vehicle for fragmented adjudication of non-determinative issues. Subsection (a) of the Rule states that a party "seeking to recover *upon a claim, counterclaim, or cross-claim* ..., may ... move ... for a summary judgment in the party's favor upon all or any part thereof." F.R.C.P. 56(a) (emphasis added). Furthermore, Subsection (c) states that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages", *see* F.R. Civ. P. 56(c). The clear implication is that the issue of liability is the only non-determinative issue which may be disposed of on summary judgment. *See United*

*States v. American Int'l Group, Inc.,* 1997 WL 66786, *2 (S.D.N.Y. Feb. 14, 1997) (holding that a ruling on a non-dispositive issue would be "inappropriate"); *see also City of Wichita, Kan. v. U.S. Gypsum Co.,* 828 F.Supp. 851, 869 (D.Kan.1993), *rev'd on other grounds,* 72 F.3d 1491 (10th Cir. 1996) ("Rule 56(c) authorizes only the entry of judgments on claims, not single issues or elements that are not dispositive of judgment on those claims."); *Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.1985) ("As this Court has often repeated ... Rules 56(a) and 56(b) simply do not permit the piecemealing of a single claim or the type of issue-narrowing sought here.").

The SEC contends that these cases are unpersuasive, maintaining that to interpret Rule 56(a) to forbid motions for summary judgment on elements of claims would be "inconsistent with the very purpose of the Federal Rules of Civil Procedure," Pl.'s Mem. in Supp. of Mot. for Sum. J. at 4.[2] This Court has not found, nor has the SEC cited, a single case which endorses Plaintiff's position.[3] In a poorly framed argument, the SEC both misreads Rule 56(a) and ignores precedent by claiming that

language in Rule 56(a) which authorizes parties to move for summary judgment on a claim or "any part thereof" thereby authorizes a summary judgment motion regarding an element of a claim, since an element is "part" of a claim. Pl.'s Mem. in Supp. of Mot. for Sum. J. at 4, quoting F.R.C.P. 56(a). *See also id.* at 4 n. 3. The only case cited by the Plaintiff in support of this interpretation of Rule 56(a), *United States v. American Int'l Group, Inc.,* actually holds the opposite, stating that a ruling on a motion for summary judgment on an issue which would not resolve a claim or any part thereof would be "inappropriate." *United States v. American Int'l Group, Inc.,* 1997 WL 66786, *2 ; *see also Kendall McGaw Laboratories, Inc. v. Community Memorial Hospital,* 125 F.R.D. 420, 421 (D.N.J.1989) ("Summary judgment may be had as to one claim among many, but it is well settled that neither subsection [56(a) or (b) ] allows such a judgment as to one portion [of] a claim [with the exception of the issue of liability].").[4]

Plaintiff's attempt to rely on Rule 56(d) is equally unsuccessful. Rule 56(d) provides in part that: *"[i]f on motion under this rule judgment is not rendered*

---

2. The SEC argues that to deny litigants the opportunity to request factual determinations from the court regarding elements of claims would subvert the goal of encouraging the speedy resolution of cases. It is not clear, however, that allowing determinations of elements of claims would further the interests of judicial economy. As one federal court noted, to permit such requests would result in "numerous and repetitive motions seeking to resolve limited factual issues in a piecemeal fashion ... [which] would waste judicial resources in almost every case." *Capitol Records v. Progress Record Distrib., Inc.,* 106 F.R.D. 25, 29 (N.D.Ill.1985).

3. In *SEC v. Bangham,* 89 Civ. 7910, 1993 U.S. Dist. Lexis 19828 (S.D.N.Y. Nov. 19, 1993), *aff'd,* 1994 U.S. Dist. Lexis 6460 (S.D.N.Y. May 17, 1994), cited by Plaintiff, the Court

did not address the question of whether the request for partial summary judgment on elements of the claim was properly brought in that case.

4. The SEC presents a similarly shaky argument that another case cited by Thrasher, *Yale Transport Corp. v. Yellow Truck & Coach Mfg. Co.,* 3 F.R.D. 440, 441 (S.D.N.Y.1944), is "unpersuasive" since it concerns a motion to strike under Federal Rule of Civil Procedure 12(f) and not a motion for summary judgment. *Yale Transport* does concern a 12(f) motion, but the court discussed the scope of Rule 56(d) in the process of deciding the 12(f) motion, noting that "Rule 56(d) does not authorize the initiation of motions the sole object of which is to adjudicate issues of fact which are not dispositive of any claim or part thereof." *Id.*

*upon the whole case or for all the relief asked* . . . the court . . . shall . . . make an order specifying the facts that appear without substantial controversy." (emphasis added). The rule does not provide a mechanism whereby litigants · can request such relief directly. *See City of Wichita, Kan. v. U.S. Gypsum Co.,* 828 F.Supp. 851, 869 (D.Kan.1993), *rev'd on other grounds,* 72 F.3d 1491 (10th Cir.1996) ("This rule does not authorize an independent motion to establish certain facts as true but merely serves to salvage some constructive result from the judicial effort expended in denying a proper summary judgment motion."); *see also Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.1985) ("Rule 56(d)'s issue-narrowing provision operates only in the wake of an unsuccessful (and proper) motion under Rule 56(a) or 56(b) . . . There is no such thing as an independent motion under Rule 56(d)."); *Capitol Records v. Progress Record Distrib., Inc.,* 106 F.R.D. 25, 30 (N.D.Ill.1985) ("A fair reading of Rule 56(d), then, is that it does not allow a party to bring a motion for a mere factual adjudication. Rather, it allows a court, on a proper motion for summary judgment, to frame and narrow the triable issues if the court finds that such an order would be helpful to the progress of the litigation.").

Plaintiff disagrees with the reasoning in these cases, stating, without support, that it "is not the law" that "while a court may enter an order under Rule 56(d) specifying facts that appear without substantial controversy, a litigant may not request that relief." Pl.'s Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. at 7, 8. In fact that is precisely the law. The plain language of the Rule is clear, permitting courts to issue orders narrowing trial issues only "[i]f on motion under this rule judgment is not rendered upon the whole case or for all the relief asked," F.R.C.P. 56(d), and the SEC does not point to a single case in which a

court interpreted Rule 56(d) to authorize requests from litigants independent of summary judgment motions. In fact, Rule 56(d) actually undermines Plaintiff's reliance on · Rule 56(a), since, by permitting factual determinations regarding elements of claims only in the wake of unsuccessful motions for summary judgment, Rule 56(d) "implicitly establishes that summary judgment is available only for an entire claim at minimum." *Capitol Records v. Progress Record Distrib., Inc.,* 106 F.R.D. at 28.

The Court holds that the SEC's motion for partial summary judgment is not authorized under Federal Rule of Civil Procedure 56. The motion is denied.

## DEFENDANT HIRSH'S MOTION FOR SUMMARY JUDGMENT

Defendant Hirsh now moves for Summary Judgment, or, in the ˙ alternative, Partial Summary Judgment, maintaining that "a false rumor from by [sic] an unreliable source cannot hold a defendant liable." Hirsh's Reply Mem. at 1. For the reasons outlined below the Court finds that there are genuine issues of material fact which preclude the grant of summary judgment.

### Summary Judgment Standards

A motion for summary judgment may be granted under Fed.R.Civ.P. 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ·viewing the evidence, the Court must "assess the record in the light most favorable to the nonmovant and . . . draw all reasonable inferences in its favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990); *see also McLee v. Chrysler Corp.,* 109 F.3d 130, 134

(2d Cir.1997). Although the movant initially bears the burden of showing that there are no genuine issues of material fact, once such a showing is made, the opposing party must produce sufficient evidence to permit a reasonable jury to return a verdict in its favor, identifying "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505. "[U]nsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000), so a summary judgment motion "will not be defeated merely ... on the basis of conjecture or surmise." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995). If the court finds that there are factual disputes regarding material issues, however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *see also Repp & K & R Music, Inc. v. Webber*, 132 F.3d 882, 890 (2d Cir.1997) ("Clearly, the duty of a court on a motion for summary judgment is ... not to decide factual issues. In this regard, the court's task is issue identification, not issue resolution.").

### § 10(b) of the Exchange Act and Rule 10b–5

In order to establish a violation under § 10(b) of the Exchange Act and Rule 10b–5 the SEC must show that the Defendant traded in securities while in possession of material, nonpublic information which he did not disclose and which he knew or should have known had been initially disclosed in violation of an insider's fiduciary duty. *See SEC v. Falbo*, 14 F.Supp.2d 508, 518 (S.D.N.Y.1998). Hirsh argues that the SEC cannot establish any of these elements, maintaining: (1) that the information disclosed by Sanker was not material, (2) that Hirsh did not know-

ingly possess material, nonpublic information regarding Motel 6, and (3) that even if Thrasher did breach a fiduciary duty when he disclosed Accor's interest in Motel 6 to Harris, which Hirsh disputes, Hirsh could not have known of that breach. In order to defeat Hirsh's Motion for Summary Judgment, the SEC must identify facts from the record which raise genuine issues of material fact regarding each of the elements of liability. *See Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505 ("As to materiality, the substantive law will identify which facts are material.").

### Materiality

Information is material under securities laws if "there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [invest]." *Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). A tip does not have to be certain before it is material, as long as "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* Recognizing that it might be difficult to determine the materiality of "contingent or speculative information or events," *id.* at 238, 108 S.Ct. 978, the Supreme Court has held that "materiality 'will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'" *Id.*, quoting *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir.1968); *see also United States v. Cusimano*, 123 F.3d 83, 88 (2d Cir.1997). Consequently "[w]hether merger discussions in any particular case are material therefore depends on the facts," *Basic, Inc. v. Levinson*, 485 U.S. at 238, 108 S.Ct. 978.

Hirsh claims that the information he received from Sanker was not material because it was false and vague, the source was both remote and unknown, and the "tippers" were inherently unreliable. Hirsh asserts that every verifiable fact given Hirsh by Sanker was proven false, including the date of the proposed take-over and the identity of the source inside Motel 6, and he characterizes Sanker's information as too general to be considered material.[5] *see* Hirsh Mem. in Supp. at 7–9. Indeed, "the ability of a court to find a violation of the securities laws diminishes in proportion to the extent that the disclosed information is so general that the recipient thereof is still undertaking a substantial economic risk that his tempting target will prove to be a 'white elephant.' " *SEC v. Monarch Fund*, 608 F.2d 938, 942 (2d Cir.1979) (citations and internal quotation marks omitted).

The SEC counters that even though some of the details passed along by Sanker were inaccurate, the "essence" of what Sanker allegedly passed along to Hirsh, that "negotiations were under way to sell Motel 6 for a substantial premium over the current market price," SEC's Mem. in Opp. at 15, was both true and highly material.[6] Early information regarding mergers will often be both "speculative and tenuous," *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir.1997), but if that information comes from an insider and concerns actual and serious merger discussions, "a lesser level of specificity is required [to establish materiality]." *Id.* As the Supreme Court has recognized, " '[i]nside information as regards mergers ... can become material at an earlier stage than would be the case as regards lesser transactions-and this even though the mortality rate of mergers at such formative stages is doubtless high.' " *Basic, Inc. v. Levinson*, 485 U.S. 224, 238, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), quoting *SEC v. Geon Indus., Inc.*, 531 F.2d 39, 47–48 (2d Cir.1976); *see also Glazer v. Formica Corp.*, 964 F.2d 149, 156 (2d Cir.1992) (same); *SEC v. Shapiro*, 494 F.2d 1301, 1306–07 (2d Cir.1974) (holding that, even though "negotiations had not jelled to the point where a merger was probable," information disclosed regarding those negotiations was material in light of the potential profits). In fact, even disclosures about tender offer negotiations that eventually fail may be considered material. *See SEC v. Gaspar*, 83 Civ. 3037(CBM), 1985 WL 521, *14 (S.D.N.Y. Apr. 16, 1985) ("The ultimate success of the negotiations is only one factor to consider" in determining materiality).

Regardless of whether the information disclosed by Sanker could be considered material under other circumstances, Hirsh argues that in this case it was inherently immaterial since the informants, a "nightclub promoter" and "male prostitute dying of AIDS," both "reputed to be dishonest and desperate for money," were not believable. Hirsh Mem. in Supp. at 11. Hirsh asserts that these types of people

---

**5.** Hirsh cites *U.S. v. Mylett*, 97 F.3d 663, 667 (2d Cir.1996), in which the Second Circuit noted that "[i]t may well be that insider trading has not occurred ... in situations in which an insider has made categorical statements that are *completely without foundation* and these are used successfully by a trader." *Id.* (emphasis added). Since Hirsh has not demonstrated that Sanker's tips were "completely without foundation," *Mylett* does not apply.

**6.** Hirsh disagrees, stating that "[u]nder the law, the important part of what Sanker said, 'the essence,' is the source." Hirsh's Reply Mem. at 2–3, but he doesn't cite any legal authority to support that contention, and liability under § 10(b) is not predicated upon the trader's knowledge of the insider's identity. *See SEC v. Musella*, 678 F.Supp. 1060 (S.D.N.Y.1988).

"do not put anyone on notice that vague claims are from a credible inside source," Hirsh Reply Mem. at 8, and notes that "unreliable information may be held to be immaterial as a matter of law." *Garcia v. Cordova*, 930 F.2d 826, 830 (10th Cir.1991). Hirsh misreads *Garcia*, however; in *Garcia* the Tenth Circuit used the adjective "unreliable" to refer to highly speculative and subjective information, not to potential sources of information.[7] Unlike the "soft information" at issue in *Garcia, see id.* at 830, inside information about ongoing takeover talks may be highly material even though it is highly speculative. *See SEC v. Mayhew*, 121 F.3d at 52. To grant Hirsh's motion on this point would be tantamount to determining that, as a matter of law, Harris and Sanker were so unreliable that information which could be material if passed along by others would be rendered immaterial merely because they were the intermediaries, and there is simply no evidence on the record to warrant such an extraordinary determination.[8]

■ The SEC plausibly points out that despite Hirsh's assertion that "[a] reasonable investor in Hirsh's shoes would not believe [Sanker] had inside information,"

Hirsh Mem. in Supp. at 10, Hirsh's behavior indicates that he did indeed believe Sanker.[9] "[A] major factor in determining whether information was material is the importance attached to it by those who knew about it," *SEC v. Mayhew*, 121 F.3d at 52, and the SEC has presented circumstantial evidence suggesting that Hirsh did believe what Sanker told him about the takeover negotiations involving Motel 6. Hirsh admits that after his initial conversation with Sanker he called his broker and told him to research whether he should invest in Motel 6, a company in which he had previously not had any interest. He made his first investment in Motel 6 shares within the week, he borrowed money from his brother to trade on Motel 6 shares, he invested in highly speculative call options, and, with his friend Rosenblatt, invested a total of over $220,000. Pls.' Mem. in Opp. at 18. A reasonable jury could find on the basis of this evidence that Hirsh bought Motel 6 shares and call options because he believed Sanker. While Hirsh claims that he traded on the basis of advice from his broker Odwak, the price and volume spikes of Motel 6 and on the public rumors that Motel 6 was a

---

7. The plaintiffs in *Garcia* had alleged that the defendants, corporate insiders, committed fraud by failing to disclose asset appraisal information before purchasing stock; the 10th Circuit held that this information was immaterial as a matter of law "due to its speculative and unreliable nature." *Garcia v. Cordova*, 930 F.2d 826, 827 (10th Cir.1991). Not only were the appraisals "soft information ... 'inherently involv[ing] some subjective analysis or extrapolation,'" *id.* at 830, citation omitted, but also much of this soft information was out of date.

8. The SEC characterizes Hirsh's attacks on Harris and Sanker as "repugnant." SEC Mem. in Opp. at 4. Repugnant or not, such arguments are clearly inappropriate in a summary judgment motion, since determinations of credibility are properly the province of the

trier of fact. Hirsh has presented no evidence that even comes close to establishing that either Sanker or Harris were so definitively unreliable that no reasonable jury could believe disclosures made by them were material.

9. Decrying what he terms the SEC's "circular reasoning," Hirsh asserts that the SEC should not be able to "use subjective reliance (while sidestepping the need for proof) to show the objective elements of materiality and scienter." Hirsh's Reply Mem. at 6. In fact, the SEC's reasoning is not at all circular. It is Hirsh who characterizes Sanker's information as unreliable in an attempt to cast doubt upon its materiality, and circumstantial evidence that Hirsh did not view Sanker's tip as unreliable at the time he purchased Motel 6 shares and call options serves to rebut Hirsh's contentions.

takeover target, not on the basis of what Sanker told him, *see* Hirsh's Mem. in Supp. at 4–5, 15–16, he admits that he paid Sanker $13,500 for his information. Hirsh doesn't explain why he paid a supposedly disreputable source a substantial amount of money for unreliable information which he asserts he did not use. Furthermore, Sanker testified at his deposition that Hirsh tried to disguise the alleged kickback, urging Sanker to testify that the money was reimbursement for interior design work, an allegation which Hirsh denies. Pls.' 56.1 Stmt. ¶ 21. Hirsh's investment behavior and his payment to Sanker constitute strong circumstantial evidence that Hirsh believed Sanker possessed material inside information. Drawing all inferences in favor of the non-movant, this Court finds that a reasonable jury could determine that the information disclosed by Sanker was material.

 Materiality aside, Hirsh argues that "failure to disclose false information cannot be actionable, because a tipper of false information can be sued for fraud." Hirsh Mem. in Supp. at 11. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 301, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985). Even if Hirsh had established that the information Sanker disclosed could be characterized as "false," something the SEC disputes, Hirsh's reliance on *Bateman* is misplaced. According to the Supreme Court, suits against tippers cannot be brought if the information disclosed is merely inaccurate; "[o]nly in the situation where the investor has been deliberately defrauded will he be able to maintain a private suit." *Id.* There is no evidence that Sanker was deliberately feeding Hirsh false information in order to manipulate the market; in fact, Sanker only stood to gain from his disclosures if Hirsh made money on his Motel 6 investments and gave him a kickback. *Bateman*

undercuts Hirsh's argument because it establishes, by implication, that tippees are potentially liable for insider trading even if they lose money by trading on false information. *See Bateman* at 318, 105 S.Ct. 2622 (noting that defrauded "tippees who bring suit [against tippers who gave false information] expose themselves to the threat of substantial civil and criminal penalties for their own potentially illegal conduct.").

In an equally unpersuasive argument, Hirsh maintains that he should have no liability for trades which occurred on July 3ʳᵈ and 5ᵗʰ because on those dates the deal between Accor and Motel 6 had fallen through. *See* Hirsh Mem. in Supp. at 17. He asserts that "[s]ince the materiality of facts turns on their importance to a reasonable investor, materiality must vary with truthfulness and accuracy." Hirsh's Reply Mem. at 8. Hirsh does not cite a single case in which a court, after finding that disclosures regarding tender offer negotiations were material, went on to track the defendant's liability by mapping the ebb and flow of those negotiations. Furthermore, a reasonable jury, using the probability/magnitude balancing test adopted by the Supreme Court in *Basic Inc., v. Levinson*, 485 U.S. at 238, 108 S.Ct. 978, could find that a reasonable investor would view disclosure of tender negotiations as "having significantly altered the 'total mix' of information made available," *id.* at 231, 108 S.Ct. 978, even at those junctures when negotiations seemed likely to break down.

In short, Hirsh has failed to establish, as a matter of law, that the information disclosed to him by Shanker was immaterial. The Plaintiff has identified facts which support a finding that Sanker's disclosure was material, and, since a reasonable jury could, on the basis of the record, find that Sanker disclosed material information to

Hirsh regarding the potential acquisition of Motel 6, summary judgment for Hirsh would not be appropriate on the basis of this element of § 10(b) and Rule 10b–5 liability.

### Knowing Possession of Nonpublic Information

██ In order to prove Hirsh's liability under Section 10(b) of the Exchange Act or Rule 10b–5 promulgated thereunder, the Plaintiff must also establish that Hirsh traded while knowingly in possession of material, nonpublic information. *See United States v. Teicher*, 987 F.2d 112, 120 (2d Cir.1993); *see also In re Oxford Health Plans, Inc., Securities Litigation*, 187 F.R.D. 133, 143 (S.D.N.Y.1999). Hirsh denies that he knowingly possessed material, nonpublic information concerning Motel 6. According to Hirsh, after Sanker told him that he had inside information from Harris' "father," he "checked out the information," and, finding that there was no "Harris" on the Motel 6 board, he believed that Sanker's claims of having an inside source were false.[10] Hirsh maintains that he, "as an outsider, could not ascertain if the information was nonpublic," Hirsh Mem. in Supp. at 13, and "[g]iven the widespread discussion of a Motel 6 tender offer, it was reasonable for Hirsh to believe what he was told was not from an insider." *Id.* at 14. However, since Sanker expressly told him that "this was privi-

leged, inside information that came from a source inside Motel 6," Zabb Aff., Ex. NN at 41–43 (Sanker Dep.), Hirsh didn't need to "ascertain" anything about the source of the information.[11] Hirsh's initial interest in Motel 6 was sparked by information which, according to his tipper, came from a Motel 6 insider, and a reasonable jury could certainly find that Hirsh knew that that information was both material and nonpublic.[12]

██ Hirsh further argues that any assertion that he was trading on inside information would be undermined by looking at his trading pattern, since his purchases were not timed to take the best advantage of the inside information allegedly at his disposal. *See* Hirsh Mem. in Supp. at 15. He asserts that when he invested in Motel 6 he relied on the price and volume spikes of Motel 6, on the public rumors that Motel 6 was a takeover target, and on his broker Odwak's advice, not on the supposedly unreliable information disclosed by Sanker. *See* Hirsh's Mem. in Supp. at 4–5, 15–16. However the SEC needn't prove that Hirsh actually decided to trade based on the material, nonpublic information which Sanker had disclosed to him. *See Teicher*, 987 F.2d at 120–21 (adopting the SEC's "knowing possession" standard); *see also SEC v. Warde*, 151 F.3d 42, 47 (2d Cir.1998); *Oxford Health Plans, Inc.*, 187 F.R.D. at 143. The Second Circuit has

10. Hirsh argues further that he believed that Sanker did not have an inside source because a true insider would have disclosed more specific information, including the name of the acquiring company. Hirsh Mem. in Supp. at 15.

11. Hirsh mistakenly relies on *SEC v. Monarch Fund*, 608 F.2d 938, 943 (2d Cir.1979), in which the defendant, responding to market rumors, sought information from individuals which, as it turned out, was nonpublic. *Id.* at 942–43. There was nothing in the record to suggest that the defendant in *Monarch* either

knew that the information was nonpublic or suspected that his informants had done anything improper.

12. Hirsh's repeated assertions that Sanker retracted his initial statement that his source was a Motel 6 insider are simply not true. While Sanker did testify that he didn't know the specific identity of the source until two weeks before the deal between Accor and Motel 6 was announced, *see* Zabb Aff., Ex. NN at 21, 57, 340, 349 (Sanker Dep.), he never retracted his initial claim that the information came from a source inside Motel 6.

held that a trader who possesses nonpublic information has an unfair advantage over less informed investors whether that person consciously relies on the nonpublic information or. not. "Unlike a loaded weapon which may stand ready but unused, material information can not lay idle in the human brain." *Teicher*, 987 F.2d at 120. Therefore whether Hirsh used Sanker's information· or not is ultimately irrelevant for the purposes of this motion.

Even if the use of material, nonpublic information was an element of liability under § 10(b) and Rule 10b–5, Hirsh's assertion that he did not rely on Sanker's disclosures should more properly be made at trial, not in a motion for summary judgment. A party who moves for summary judgment has the burden of outlining not one plausible account of the events in question but the *only* possible account a reasonable jury could accept. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The SEC has identified evidence on the record, including the fact that Hirsh paid Sanker for his tip and allegedly attempted to cover-up that payment, which could lead a reasonable jury to· find that Hirsh did, in fact, rely on Sanker's information.when he decided to trade. Accordingly summary judgment is not warranted.

### Breach of Fiduciary Duty

██ Under § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, the Plaintiff must prove that (1) Thrasher breached a fiduciary duty when he disclosed information about the Accor/Motel 6 negotiations to Harris, and (2) that Hirsh knew or should have known that the information was disclosed in violation of a fiduciary duty. *See Dirks v. SEC,* 463 U.S. 646, 659, 662, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); *see also Chiarella v. United States,* 445 U.S. 222, 228, 231 n. 12, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).

Hirsh maintains that the SEC cannot prove either.

██ "[W]hether disclosure is a breach of duty ... depends in large part on the purpose of the disclosure ... Thus, the test is whether the insider will benefit, directly or indirectly, from his disclosure. *Absent some personal gain, there has been no breach of duty to stockholders.*" *Dirks v. SEC,* 463 U.S. at 662, 103 S.Ct. 3255 (emphasis added). "Such benefit can derive from the insider's use of the information to secure a 'pecuniary gain,' a 'reputational benefit that will translate into future earnings,' or simply to confer a gift of confidential information to a trading relative or friend."· *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 312, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985), citing *Dirks v. SEC,* 463 U.S. at 663–664, 103 S.Ct. 3255. Hirsh argues that Thrasher, who clearly sought no personal monetary gain from his disclosures to Harris, had no reason to think that Harris would trade on the information. The information he passed to Harris was both vague and inaccurate, suggesting that Thrasher did not intend to have Harris profit, and Harris was ultimately forced to try to manipulate Thrasher into giving him more information. "Clearly, Thrasher was not telling Harris what Thrasher knew about the Motel ·6 transaction." Hirsh Mem. in Supp. at 21. Looking at the record, Hirsh draws the conclusion that Thrasher told Harris about the possible takeover "in order to advise Carl [Harris] of a positive development for Carl's future," Hirsh's Mem. in Supp. at 22, not to make him a gift of whatever profits he could earn by trading on the information. It is also plausible, as the SEC argues, that Thrasher did intend to benefit his dying friend when he revealed Accor's interest in buying Motel 6. At the time of the disclosure, Thrasher was send-

ing Harris monthly checks for at least $1000 and had given him other valuable gifts. A reasonable jury could determine that Thrasher, a sophisticated business-man, knew what he was doing when he revealed to Harris confidential information about the proposed tender offer, and that he likewise knew that Harris could make money by trading on that information without knowing every detail of the ongoing negotiations. Since a reasonable jury would not be compelled to adopt Hirsh's interpretation of the facts on the record, summary judgment for Hirsh is not appropriate. As the Second Circuit has noted, "[d]etermining whether an insider personally benefits from a particular disclosure, a question of fact, will not always be easy for courts." *Dirks*, at 664, 103 S.Ct. 3255. In this case, that determination is properly left for the jury.[13]

■ In order to prove liability under § 10(b) and Rule 10b–5 the SEC must also prove that Hirsh knew or should have known that Thrasher breached his fiduciary duty when he disclosed material, non-public information to Harris. "The tippee's obligation has been viewed as arising from his role as a participant after the fact in the insider's breach of a fiduciary duty." *Chiarella v. United States*, 445 U.S. 222, 231 n. 12, 100 S.Ct. 1108 (1980); *see also Dirks*, 463 U.S. at 659, 103 S.Ct. 3255 ("[A] tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach."); *U.S. v. Chestman*, 947 F.2d 551, 565 (2d Cir.1991) (same). The

Plaintiff does not have to prove, however, that a remote tippee knew for certain how the initial breach of fiduciary duty occurred. In *SEC v. Musella*, 678 F.Supp. 1060 (S.D.N.Y.1988), the court granted summary judgment for the SEC, finding that there was no issue of material fact regarding the defendants' scienter even though the defendants did not even know who the insiders were. *Id.* at 1062. It was enough that circumstantial evidence showed that the defendants "should have known that fiduciary duties were being breached with respect to confidential, non-public information." *Id.* at 1063; see *also, SEC v. Sekhri*, 98 Civ. 2320,1998 WL 259932, at *2. (S.D.N.Y.1998) (noting that "it is not necessary to establish a direct link to the original tipper").

■ In the case at bar, Hirsh maintains that he could not have known of Thrasher's alleged breach of fiduciary duty since, until two weeks before the deal between Accor and Motel 6 was announced, he didn't even know who Thrasher was. He asserts that his source, Sanker, not only didn't know whether Thrasher was involved with Harris' scheme to profit on the information, *see* Hirsh Mem. in Supp. at 24, but also believed the information he had passed along was merely rumor. *See* Hirsh's Reply Mem. at 2. Hirsh reasons, therefore, that it cannot be assumed that he knew of Thrasher's alleged breach if his source did not. Hirsh's argument is flawed both because he misreads the law and because he mischaracterizes Sanker's testimony. The SEC need not prove that Hirsh knew of the details of Thrasher's involvement; to require such knowledge would effectively insulate remote tippers from liability in many instances. "Rule

---

**13.** Hirsh has presented various evidentiary objections concerning SEC's evidence of Thrasher's alleged breach. Since the SEC has presented sufficient circumstantial evi-

dence to defeat Hirsh's motion for summary judgment, it is not necessary to address those objections at this time.

10b–5 requires that the defendant subjectively believe that the information received was obtained in breach of a fiduciary duty ... Such belief may, however, be shown by circumstantial evidence." *United States v. Mylett*, 97 F.3d 663, 668 (2d Cir.1996); *see also SEC v. Musella*, 578 F.Supp. 425, 441 (S.D.N.Y.1984) (same).

The Supreme Court has recognized that it could be difficult to establish by circumstantial evidence that a tippee knew that his or her source breached a fiduciary duty, *see United States v. O'Hagan*, 521 U.S. 642, 675, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997), but to defeat a motion for summary judgment the Plaintiff need only identify facts that could lead a reasonable jury to find the Defendant knew a breach had occurred. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The SEC has met that burden. Sanker testified that he told Hirsh that "this was privileged, inside information that came from a source inside Motel 6," Zabb Aff., Ex. NN at 41–43 (Sanker Dep.), and, despite Hirsh's assertions, Sanker never retracted that statement. Hirsh may not have known the identity of the insider, but he was on notice that the information revealed was "privileged;" arguably he should have known that it was disclosed·in breach of that insider's fiduciary duty. Hirsh cites *SEC v. Falbo*, 14 F.Supp.2d 508, 525 (S.D.N.Y.1998) in support of his contention that, since he didn't know the identity of the supposed source, he "would have known no more than an informed investor who had followed media reports in

the preceding months." *Id. See* Hirsh's Mem. In Supp. at 10. Hirsh quotes this language out of context, however. The full sentence reads: "Without knowledge as to why [the source] believed that Pillsbury was a takeover target, ... [the defendant] would have known no more than an informed investor who had followed media reports in the preceding months." *Id.* According to Sanker, Hirsh *did* know why Sanker believed Motel 6 was a takeover target-because Sanker had privileged, inside information to that effect from an insider at Motel 6. Hirsh did not need to know Thrasher's identity to know that the inside source had breached his fiduciary duty.[14]

Accordingly, the Court finds that the SEC has identified sufficient facts from the record to permit a reasonable jury to find that Hirsh knew or should have known that the information disclosed to him was done so in violation of the source's fiduciary duty. Since Hirsh has been unable to establish, as a matter of law, that the SEC could not prove all of the elements of liability under § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, Hirsh's Motion for Summary Judgment on these claims is hereby denied.

## § 14(e) of the Exchange Act and Rule 14e–3

In order to establish a violation under § 14(e) of the Exchange Act and Rule 14e–3 promulgated thereunder, the SEC must prove that the Defendant traded in securities "while in possession of material, non-

---

**14.** Consequently, this Court rejects Hirsh's argument that summary judgment should be granted regarding securities purchases he made before Sanker revealed Thrasher's identity. Hirsh's reliance on *SEC v. Moran*, 922 F.Supp. 867, 895 (S.D.N.Y.1996), is misplaced. In *Moran*, the SEC unsuccessfully brought charges of insider trading against a

defendant who did not trade at all after the disclosure of inside information regarding a prospective merger. *See id.* Since all of Hirsh's investments in Motel 6 occurred after Sanker disclosed the alleged material, nonpublic information, *Moran* simply does not apply to this case.

public information which he did not disclose and which he knew or should have known had been acquired 'directly or indirectly' from an insider of the offeror or issuer, or someone working on their behalf." *United States v. Chestman*, 947 F.2d 551, 557 (2d Cir.1991) (en banc). In addition, the SEC must prove that "a 'substantial step' had been taken toward a tender offer at the time of the inside trading, but there is no requirement to show that [the insider] breached a fiduciary duty." *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir.1998); *see also United States v. O'Hagan*, 521 U.S. 642, 676, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997); *SEC v. Mayhew*, 121 F.3d 44, 49 (2d Cir.1997); *SEC v. Falbo*, 14 F.Supp.2d at 511, 527 (S.D.N.Y.1998).[15] With the exception of the "substantial step" requirement, Hirsh's potential liability under all of the elements of § 14(e) and Rule 14e–3 liability has already been discussed in terms of the § 10(b) and Rule 10b–5 claims; for the reasons noted above this Court finds that genuine issues of material fact remain regarding each of these elements. Since Hirsh does not allege the absence of material factual disputes regarding whether a "substantial step" was taken towards a tender offer at the time he invested in Motel 6,[16] this Court must deny Hirsh's Motion for Summary Judgment on the § 14(e) and Rule 14e–3 claims.

### CONCLUSION

For the reasons outlined above both the Plaintiff's Motion for Partial Summary Judgment and Defendant Hirsh's Motion for Summary Judgment are denied in their entirety. Hirsh's request that the Court deny the SEC's request for an injunction is likewise denied as premature. All parties are directed to contact Magistrate Judge Dolinger as soon as possible for the purpose of scheduling a settlement conference.

**SO ORDERED.**

---

15. As the Second Circuit held in *Chestman*, "Rule 14e–3(a) is a disclosure provision. It creates a duty in those traders who fall within its ambit to abstain or disclose, without regard to whether the trader owes a pre-existing fiduciary duty to respect the confidentiality of the information." *Chestman*, 947 F.2d at 557.

16. Indeed, Hirsh concedes in his Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment that there is a triable issue of fact as to whether a substantial step was taken. *See* Hirsh's Mem. in Opp. to Pl.'s Mot. for Summ. J. at 14–18.