161 F.Supp.2d 227 (2001)
In re MOTEL 6 SECURITIES LITIGATION.
Redtail Leasing, Inc., individually and on behalf of all others similarly situated, Plaintiffs,
v.
Hugh Thrasher, et. al., Defendants.
Robert J. Rosener, individually and on behalf of all others similarly situated, Plaintiffs,
v.
Hugh Thrasher, et. al., Defendants.
Nos. 94 Civ. 2183(JFK), 93 Civ. 2866(JFK).
United States District Court, S.D. New York.
April 5, 2001.
*228 *229 Sachnoff & Weaver, Ltd., Chicago, IL, J. Samuel Tenebaum, John W. Moynihan, Scott R. Drury, of counsel, for Plaintiffs.
Defendant Ezra Chammah, New York City, Pro se.
Nagler and Associates, Los Angeles, CA, Lawrence H. Nagler, Robert M. Zabb, of counsel for Defendant Jonathan Hirsh.
*230 KEENAN, District Judge.
Before the Court are Defendant Ezra Chammah's pro se Motion for Summary Judgment and for Judgment on the Pleadings, and Defendant Jonathon Hirsh's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment, in which Defendant Chammah joins (without papers). For the reasons outlined below, both Motions are granted in part and denied in part.

BACKGROUND
The Court assumes familiarity with the facts discussed in its earlier opinions in this case and in the related cases, SEC v. Hugh Thrasher, et al., No. 92-6987 (S.D.N.Y.) (JFK), and Redtail v. Bellezza, 95 Civ. 5191(JFK), and provides below only a rudimentary recitation of the facts as needed for this decision.
Plaintiffs allege a nationwide insider trading scheme by persons who possessed material, nonpublic information concerning the proposed acquisition of Motel 6, L.P., a Dallas-based national chain of owner-operated economy motels, by Accor, S.A. ("Accor"), a French-based company. Plaintiffs were the holders of call options on Motel 6 securities, and they assert that Defendants were part of a conspiracy to trade on highly sensitive inside information about tender offer negotiations occurring in New York between Motel 6's largest shareholder, Kohlberg Kravis Roberts & Company ("KKR"), and Accor. Defendant Hugh Thrasher ("Thrasher") was executive vice-president of Motel 6 in charge of communication at the time of the tender offer negotiations. After learning about the proposed takeover on May 21, 1990, Thrasher allegedly tipped Carl V. Harris ("Harris"), now deceased, about the tender offer negotiations. Pls.' 56.1(b) Stmt. in Opp. to Hirsh's Mot. ¶ 2.[1] Harris then allegedly told several others, including Defendants Jeffrey Sanker ("Sanker"), Harris' roommate, and William Gomez ("Gomez"), Harris' friend. Gomez and Harris later told Defendant Gregg Shawzin ("G.Shawzin"), a stockbroker, about the proposed tender offer. See id. ¶¶ 7-8, 10. The deal between Accor and Motel 6 was finalized and made public on July 12, 1990. See id. ¶ 38.
One of Sanker's tippees was Defendant Jonathan Hirsh ("Hirsh"). Plaintiffs allege that, after learning from Sanker that an inside source on the Board of Motel 6 had revealed that the hotel chain was involved in ongoing tender offer negotiations, Hirsh concocted a scheme whereby he could trade on that information with impunity. Hirsh allegedly planned to make it appear that he had received his information about Motel 6 from his broker, Roger K. Odwak ("Odwak"). See id. ¶¶ 30-31. Hirsh then allegedly entered into a partnership with Defendant Lee Rosenblatt ("Rosenblatt") to trade Motel 6 securities through Rosenblatt's securities account and split the illegal profits. Together with Rosenblatt and on his own, Hirsh then purchased Motel 6 call options, and allegedly the two realized illegal profits of almost $400,000. See id., ¶ 38. Hirsh paid Sanker $14,500 in two installments, payments Plaintiffs allege were a kickback of profits from the insider trading scheme. Plaintiffs further allege that when Sanker was later subpoenaed by the SEC, Hirsh encouraged him to say that the payments were for design work performed at Hirsh's home. See id. ¶¶ 40-42, 44-45.
*231 One of G. Shawzin's alleged tippees was his brother, Defendant Mark Shawzin ("M.Shawzin"); M. Shawzin in turn allegedly recruited Defendant Ezra Chammah ("Chammah") into the insider trading ring. Defendant Chammah is alleged to have traded in Motel 6 securities using the inside information and to have realized at least $229,700 in profits from that trading. He is also alleged to have agreed to pay the Shawzin brothers a portion of his illegal profits as a commission or "kickback" that furthered the purposes of the conspiracy. See Pls.' 56.1(b) Stmt. in Opp. to Chammah's Mot. ¶¶ 16-17, 19, 24-25.
In their Amended Complaint, Plaintiffs initially asserted claims for violations of Section 10(b) and 14(e) of the Securities Exchange Act of 1934 ("Exchange Act"), Rules 10b-5 and 14e-3 promulgated thereunder, Section 20A(a) of the Exchange Act, RICO violations [18 U.S.C. § 1962(b), (c) and (d)], Common Law Fraud and Unjust Enrichment.[2] Chammah and Hirsh now seek dismissal of all claims remaining against them. The Court will consider each Motion in turn.

DISCUSSION

I. SUMMARY JUDGMENT STANDARDS

A motion for summary judgment may be granted under Fed.R.Civ.P. 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When viewing the evidence, the Court must "assess the record in the light most favorable to the nonmovant and ... draw all reasonable inferences in its favor." Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990); see also McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir.1997). Although the movant initially bears the burden of showing that there are no genuine issues of material fact, once such a showing is made, the opposing party must produce sufficient evidence to permit a reasonable jury to return a verdict in its favor, identifying "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248, 256, 106 S.Ct. 2505. "[U]nsupported allegations do not create a material issue of fact," Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000), so a summary judgment motion "will not be defeated merely ... on the basis of conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991); see also Goenaga v. March Of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995). If the court finds that there are factual disputes regarding material issues, however, summary judgment is not appropriate. See Anderson, 477 U.S. at 249, 106 S.Ct. 2505; see also Repp & K & R Music, Inc. v. Webber, 132 F.3d 882, 890 (2d Cir.1997) ("Clearly, the duty of a court on a motion for summary judgment is ... not to decide factual issues. In this regard, the court's task is issue identification, not issue resolution.").

II. CHAMMAH'S MOTION FOR SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS

Chammah now moves for Summary Judgment and Judgment on the Pleadings. *232 For the reasons outlined below, the motion is granted in part and denied in part.
As a threshold matter, Plaintiffs argue that Chammah's Motion should be denied in its entirety since he has failed to comply with Local Rule 56.1(a) requiring parties who move for summary judgment to submit a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1. "Failure to submit such a statement may constitute grounds for denial of the motion," id., however, since "pro se litigants are to be given special latitude," Armstrong v. Tucker, 97 Civ. 7388(AKH)(KNF), 2000 U.S. Dist. LEXIS 2434 at *5 (S.D.N.Y. Feb. 29, 2000), this Court will exercise its discretion and entertain the motion on its merits.

A. Common Law Fraud Claim

Chammah maintains that Plaintiffs' common law fraud claim must be dismissed because, inter alia, the Plaintiffs cannot prove that they relied on a misrepresentation or omission Chammah is alleged to have committed. In an earlier decision in this case, this Court dismissed common law fraud claims against Hirsh for precisely this reason, noting that:
"where Plaintiffs' factual allegations focus solely on an insider trading conspiracy that perpetrated a fraud on the market, and Plaintiffs have alleged no connection to the Defendants other than the fact that Plaintiffs traded on the market contemporaneously with Defendants, Plaintiffs have not alleged facts to support a claim of actual, direct reliance on Defendants' omissions."
In re Motel 6 Litigation, 93 Civ. 2183(JFK), 1997 WL 154011 at *6 (S.D.N.Y. Apr. 2, 1997).
Unlike actions under federal securities laws where reliance is presumed if the omissions were material and the defendant had a duty to disclose, see Pollack v. Laidlaw Holdings, Inc., 90 Civ. 5788(DLC), 1995 WL 261518 at *11 (S.D.N.Y. May 3, 1995), common law fraud claims must be supported by factual allegations demonstrating a plaintiff's actual, direct reliance on the misrepresentation or omission. See Golden Budha Corp. v. Canadian Land Co., 931 F.2d 196, 202 (2d Cir.1991); Olshansky v. Sutton, 2001 WL 99857 at *9, 2001 U.S. Dist. LEXIS 945 at *9 (S.D.N.Y. Feb. 6, 2001). To survive a Motion for Summary Judgment, the Plaintiffs must produce sufficient evidence to permit a reasonable jury to return a verdict in its favor, identifying "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, 477 U.S. at 248, 256, 106 S.Ct. 2505. Plaintiffs have not identified any facts which might suggest sufficient reliance. Accordingly, Chammah's Motion for Summary Judgment on Plaintiffs' Common Law Fraud claim is hereby granted.

B. Unjust Enrichment Claims

Chammah also seeks dismissal of Plaintiffs' unjust enrichment claims, arguing that he has fully disgorged his allegedly illegal profits and that his disgorgement renders Plaintiffs' unjust enrichment claim moot. See Chammah's Mem. in Supp. at ¶¶ 5-7. For reasons discussed below, the Court finds that Chammah has not shown conclusively that he has disgorged all of his profits. Chammah's motion with respect to the unjust enrichment claim must be granted anyway, however, for the same reasons that this Court dismissed this claim against Defendant Hirsh in an earlier decision. See In re Motel 6 Sec. Lit., 1997 WL 154011 at *7 (S.D.N.Y. Apr. 2, 1997). An unjust enrichment claim requires some type of direct dealing or actual, substantive relationship with a defendant. Plaintiffs have not identified facts on the record which establish that they had a more substantive relationship with *233 Chammah beyond a contemporaneous trading relationship. Consequently, they cannot support a claim that Chammah was unjustly enriched. Chammah's Motion for Summary Judgment on this claim is therefore granted.

C. §§ 10(b) and 14(e) and Rules 10b-5 and 14e-3

1. Direct Violations
Chammah next argues that, since he has disgorged all of the profits he obtained from allegedly illegal trading in Motel 6 securities pursuant to a Consent Order entered in the related case SEC v. Thrasher, 92 Civ. 6987(JFK), Plaintiffs cannot establish damages and, absent damages, Plaintiffs' Securities Fraud claims must be dismissed. See Chammah's Mem. in Supp. ¶ 7. Damages for contemporaneous trading under § 20(A) of the Exchange Act are limited to "the profit gained or the loss avoided," 15 U.S.C. § 78t-1(b)(1), and the amount of damages "shall be diminished by the amounts ... that such person may be required to disgorge, pursuant to a court order," 15 U.S.C. § 78t-1(b)(2).[3] While not admitting that their recovery would be limited to the disgorgement remedy, Plaintiffs assert that the court order did not, in fact, require Chammah to disgorge all of his profits. Their expert calculated Chammah's profits at $209,193, and Plaintiffs argue on the basis of this that Chammah has failed to disgorge $82, 095. See Pls.' 56.1(b) Stmt. in Opp. to Chammah's Mot., ¶ 20.[4]
Chammah counters that, even if the Plaintiffs' calculation of his profits is accurate, that amount should be reduced by the amount which he paid to his co-conspirators for the inside information, since these kickbacks diminished his profits. He argues that damages are limited to the profits gained, and he could not have `gained' from that portion of his profits that he paid to others. See Chammah's Reply Mem. ¶ 12. Chammah is wrong, however, to equate kickbacks with disgorgement. "[I]t is irrelevant for disgorgement purposes how the defendant chose to dispose of the ill-gotten gains ... [P]ayment[s] to co-conspirators are not deductible from the gross profits subject to disgorgement." SEC v. Rosenfeld, 2001 WL 118612 at *1-2, 2001 U.S. Dist. LEXIS 166 at *6-7 (S.D.N.Y. Jan. 9, 2001); see also SEC v. Benson, 657 F.Supp. 1122, 1134 (S.D.N.Y.1987).
Chammah also makes the remarkable argument that the Plaintiffs have suffered no cognizable damage, since Plaintiffs' alleged injury arose because "they were not given the opportunity to violate the securities laws ... [P]laintiffs allege that they were injured by not being brought into the alleged enterprise and deprived of the chance to take part in the alleged racketeering activity of which they complain." Chammah's Reply Mem. ¶ 6. That characterization misstates Plaintiffs' position. Plaintiffs claim injury because of Defendants' "failure to disclose the Inside Information prior to trading in SIX securities, as they were legally obligated to do." Pls.' Mem. in Opp. at 10. Plaintiffs do not complain of Defendants' failure to disclose the information to them, but rather of their failure to disclose to the public at *234 large. Chammah's specious argument has no merit.
It is sufficient to defeat a motion for summary judgment for the non-movant to identify evidence on the record which raises a genuine issue of material fact. Anderson v. Liberty Lobby, 477 U.S. at 248, 256, 106 S.Ct. 2505. Plaintiffs have done so. Since there exists a genuine issue of fact regarding the amount of damages Plaintiffs could obtain from Chammah were liability proven, Chammah's motion for summary judgment on Plaintiffs' claims for direct violations of §§ 10(b) and 14(e) and Rules 10b-5 and 14e-3 is hereby denied.

2. Aiding and Abetting and Conspiracy Liability
Chammah next argues that Plaintiffs' aiding and abetting and conspiracy claims under § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder must also be dismissed.[5] In Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164, 175, 177-78, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the Supreme Court, noting that "the statutory text controls the definition of conduct covered by § 10(b)" and finding no statutory language in § 10(b) imposing liability for aiding and abetting, refused to "amend the statute to create liability for acts that are not ... within the meaning of the statute." Id. at 173, 177-78, 114 S.Ct. 1439. Accordingly, the Court held that plaintiffs could not bring claims for aiding and abetting under § 10(b). Id. at 191, 114 S.Ct. 1439. The Second Circuit, following the Court's reasoning in Central Bank, extended that prohibition to include conspiracy claims, see Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 844 (2d Cir.1998), noting that "recognition of a cause of action for conspiracy would not only conflict with the reasoning of the Supreme Court in Central Bank, but would largely undo the effect of that decision itself, inasmuch as many aiding and abetting claims would simply be repleaded as conspiracy claims." Id.[6]
Plaintiffs have also stated claims for aiding and abetting and conspiracy under § 14(e) of the Exchange Act and Rule 14e-3, and, following the reasoning of Central Bank and Dinsmore, these claims must be dismissed as well. The text of § 14(e) states in relevant part that:
It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made ... not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer.
Nowhere in § 14(e), (or in any of the other express provisions of the 1934 Act), is there any language establishing liability for aiding and abetting. See Central Bank, 511 U.S. at 179, 114 S.Ct. 1439. As the Supreme Court noted, however, Congress did establish a type of secondary liability when it established control liability in § 20(a) of the Exchange Act. "The fact that Congress chose to impose some form of secondary liability but not others indicates a deliberate congressional choice *235 with which the courts should not interfere." Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. at 184, 114 S.Ct. 1439. Other federal statutes expressly impose liability for aiding and abetting; this one does not. The Supreme Court's clear statement that causes of action under the Exchange Act must be limited to those authorized by statutory language effectively bars aiding and abetting claims under § 14(e).[7] Similarly, following the Second Circuit's reasoning in Dinsmore, 135 F.3d at 839-844, claims for conspiracy under § 14(e) are barred as well. Accordingly, the Court grants Chammah's Motion for Summary Judgment on Plaintiffs' claims for aiding and abetting and conspiracy under §§ 10(b) and 14(e) and Rules 10b-5 and 14e-3.

D. RICO Claims

Chammah, repeating his disgorgement claims, argues that Plaintiffs cannot establish injury under the RICO statutes since "under the law they cannot recover damages." Chammah's Mem. in Supp. ¶ 15. Without injury, Chammah asserts the RICO claims must be dismissed. This argument fails because Chammah has confused damages with injury. As the Plaintiffs point out, RICO damages are not limited to disgorgement of profits; parties who are injured by a violation of 18 U.S.C. § 1962 ("RICO") have standing to bring a RICO claim and can seek treble damages.[8]See Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1100-01 (2d Cir.1988); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Plaintiffs have identified facts on the record which support their assertion that they have sustained a total of over $15 million in damages. See Pl.'s 56.1(b) Stmt., ¶ 23. Therefore, this Court rejects Chammah's challenge to Plaintiffs' standing to bring their RICO claims.

1. § 1962(b)
18 U.S.C.1962(b) states that: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." Chammah maintains that Plaintiffs' claim under § 1962(b) should be dismissed because Plaintiffs cannot established that he acquired or maintained an interest in the alleged enterprise through a pattern of racketeering. Without citing support, Chammah states that his ownership interest in Motel 6, represented by the shares he bought through the allegedly illegal trades, were "miniscule," and cannot constitute "interest or control."[9] Chammah's *236 Mem. in Supp. ¶ 19. Plaintiffs do correctly note that control is not an element of liability under § 1962(b). They argue further that Chammah's "contention fails because § 1962(b) only requires a defendant to acquire an interest in an enterprise-which Chammah did by purchasing SIX stock and options." Pls.' Mem. in Opp. at 12.
However, Plaintiffs misread the requirements of § 1962(b). As this Court has held, "[t]o state a claim under § 1962(b), a plaintiff must plead that they were injured by a defendants' acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or commission of predicate acts." Redtail Leasing v. Bellezza, 1997 WL 603496 at *3 (S.D.N.Y. Sep. 30, 1997) (emphasis added). "[T]he essence of a § 1962(b) violation is ... the acquisition or maintenance of an interest in or control of an enterprise ... Thus, a plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance in or control of an enterprise." Dornberger v. Metropolitan Life Ins. Co., 961 F.Supp. 506, 525 (S.D.N.Y. 1997); see also Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 97 Civ. 8779(RPP), 1998 WL 50200 at *4 (S.D.N.Y. Feb. 9, 1998). In Bellezza, a case related to the case at bar, this Court dismissed the Plaintiffs' § 1962(b) claim because they "offer[ed] no factual allegations to show how Defendants' acquisition of or maintenance of an interest in or control of the enterprise injured Plaintiffs in a manner distinct from the racketeering activity itself." Bellezza, 1997 WL 603496 at *4. The same can be said for the claim against Chammah. See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 657 (S.D.N.Y.1996). Plaintiffs have not identified any facts on the record which could lead a reasonable jury to find that Plaintiffs were injured by Chammah's ownership interest in Motel 6, as distinct from his insider trading.[10] Consequently, Chammah's Motion for Summary Judgment on Plaintiffs' § 1962(b) claim is granted.

2. § 1962(c)
18 U.S.C.1962(c) states that: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The Supreme Court has held that, "[i]n order to `participate, directly or indirectly, in the conduct of such an enterprise's affairs,' one must have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 180, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Chammah maintains that he was a customer of the alleged insider trading ring, and notes that Plaintiffs "do not allege that [he] tipped anyone or did anything more than purchase information and securities." Chammah's Mem. in Supp. ¶ 21. Accordingly, Chammah asserts that Plaintiff cannot maintain that he "participate[d] in the management or operation of the alleged enterprise." Id. at ¶ 20. Indeed, while § 1962(c) liability is not limited to those with "primary responsibility for the enterprise's affairs," Reves, 507 U.S. at 180, 113 S.Ct. 1163, or a "formal position in the enterprise, some part in directing the *237 enterprise's affairs is required." id. (emphasis in original).
This Court dismissed § 1962(c) claims brought by Plaintiffs in a related case after finding that allegations against the Defendants were not sufficient to establish that the Defendants had a "role in managing or directing the enterprise's affairs." Redtail Leasing v. Bellezza, 95 Civ. 5191(JFK), 1999 WL 32941 at *5 (S.D.N.Y. Jan. 22, 1999); see also Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F.Supp. 585, 592 (E.D.N.Y.1993). Plaintiffs in Bellezza alleged that the defendants passed on inside information to others, traded on inside information, received kickbacks for illegal trades, evaluated the inside information, requested additional material to assess the inside information, and advised other members regarding how to respond to a possible government investigation. Id. Chammah's alleged participation in the insider trading ring was far less indicative of a management position in the alleged racketeering enterprise than was that of the Defendants in Bellezza.
Plaintiffs, citing United States v. Allen, 155 F.3d 35, 42 (2d Cir.1998), urge that it is a question for the jury whether Chammah participated in the operation or management of the enterprise or not. "Unless a civil RICO defendant is indisputably directing the affairs of the enterprise, his commission of crimes that advance its objectives must be assessed by a factfinder to determine whether or not his criminal activity, assessed in the context of all the relevant circumstances, constitutes participation in the operation or management of the enterprise's affairs." Id. In this case, however, Chammah was indisputably not directing the affairs of the enterprise; Plaintiffs have offered no evidence whatsoever to dispute Chammah's contention that he was a mere customer of the alleged enterprise. The full extent of Chammah's alleged involvement was that he profited by trading on inside information and paid co-conspirators for that information, in one case wiring the payment to a European bank. Pls.' 56.1(b) Stmt. ¶¶ 19-20, 24-25. This is not enough to establish that Chammah directed part of the affairs of the insider trading ring. This Court therefore grants Chammah's Motion for Summary Judgment on Plaintiffs' § 1962(c) claim.

3. § 1962(d)
The Court finds that summary judgment is appropriate as regards Plaintiffs' RICO conspiracy claims as well. 18 U.S.C. § 1962(d) states simply that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." While it is not necessary that Plaintiffs allege a substantive RICO violation in order to prove liability for conspiracy, see Salinas v. United States, 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (holding that under § 1962(d) there is "no requirement of some overt or specific act ... unlike the general conspiracy provision applicable to federal crimes,"), RICO conspiracy does require an agreement. See United States v. Sessa, 125 F.3d 68, 71 (2d Cir.1997). The conspirator need not agree to commit the predicate acts himself, but he must agree to further the aim of the conspiracy. See Salinas v. United States, 522 U.S. at 63-64, 118 S.Ct. 469.
§ 1962(d) broadened traditional liability for conspiracy by removing the requirement of an overt act, but it did not remove the basic essence and element of conspiracy-that there be an agreement. As Plaintiffs correctly note, the Salinas Court established that "a court may hold a defendant liable for a conspiracy even though that defendant did not have the *238 capability to commit the substantive offense," id. at 64, 118 S.Ct. 469, but that is irrelevant to Chammah's liability since Plaintiffs do not allege that Chammah agreed to violate RICO's substantive provisions. See Redtail Leasing v. Bellezza, 95 Civ. 5191(JFK), 1999 WL 32941 at *6 (S.D.N.Y. Jan. 22, 1999) (dismissing § 1962(d) claims where Plaintiffs made "no more than conclusory allegations" that moving Defendants agreed to violate § 1962(b) or (c)). Accordingly, Chammah's Motion for Summary Judgment on Plaintiffs' § 1962(d) claim is granted.
Chammah has also moved for Judgment on the Pleadings regarding alleged violations of 18 U.S.C. § 1343 and 18 U.S.C. § 1952(a). Plaintiffs never brought these claims; they merely pleaded that these violations constituted predicate acts under RICO. See Am. Compl. ¶ 215. Therefore Chammah's Motion for Judgment on the Pleadings is dismissed as moot.

III. HIRSH'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

The Court turns now to Hirsh's Motion for Summary Judgment, or, in the alternative, Partial Summary Judgment, in which Chammah joins without papers. For the reasons discussed below, Hirsh's Motion is granted in part and denied in part.

A. §§ 10(b) and 14(e) and Rules 10b-5 and 14e-3

1. Aiding and Abetting and Conspiracy Liability
Hirsh argues that, under the Supreme Court's holding in Central Bank, N.A. v. First Interstate Bank, N.A., 511 U.S. 164, 177-78, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), and the Second Circuit's decision in Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 838 (2d Cir.1998), Plaintiffs' claims for Aiding and Abetting and Conspiracy under §§ 10(b) and 14(e) of the Exchange Act, and Rules 10b-5 and 14e-3 promulgated thereunder, must be dismissed. The Court agrees. See discussion § II.C.2 infra. The claims are hereby dismissed.[11]

2. Control Person Liability
Section 20(a) of the Exchange Act of 1934 establishes secondary liability for a person who controls, directly or indirectly, any person liable for primary violations of the Act, unless that person can show he or she acted in good faith. See 15 U.S.C. § 78t. "In order to establish a prima facie case of controlling-person liability, a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant." SEC v. First Jersey Secs., 101 F.3d 1450, 1472 (2d Cir.1996); see also Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir.1998). The SEC defines the term "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise," 17 C.F.R. 230.405 (1995). Control is not the same as influence; a "control person" must have some enforceable power over the primary violator. See In re Blech Sec. Lit., 961 F.Supp. 569, 587 (S.D.N.Y.1997) (holding that, while knowing exercise of influence over primary violator may be sufficient to establish primary liability, influence without power does not constitute control).
[P]leading respondeat superior, an agency relationship, substantial stock ownership, or officer/director status from *239 which control can be directly inferred without more, provides a sufficient basis to show control liability. However, if plaintiff seeks to attribute control status to a third party, director or employee who is not in a control position nor an outside party such as an attorney, auditor or underwriter, then further allegations must be made to show that in fact such control can be inferred.

Sloane Overseas Fund v. Sapiens Int'l Corp., 941 F.Supp. 1369, 1378 (S.D.N.Y. 1996) (emphasis added); see also Rubinstein v. Skyteller, Inc., 48 F.Supp.2d 315, 323 (S.D.N.Y.1999).
Hirsh maintains that Plaintiffs cannot show control liability, and the Court agrees. Plaintiffs recognize that control liability derives from "a special relationship, such as stock ownership or agency," Pls.' Mem. in Opp. to Hirsh's Mot. at 12, but offer no more than conclusory assertions that Hirsh had a "special relationship" with the other defendants. Plaintiffs have not identified any facts on the record to suggest that Hirsh was in a position of authority or control over his co-defendants. Therefore summary judgment is hereby granted Hirsh with respect to Plaintiffs' control person liability claims. Defendant Chammah has joined in Hirsh's Motion, and Plaintiffs have also failed to identify any facts supporting allegations that Chammah was in a position of authority or control over his alleged co-conspirators. Summary judgment is therefore also granted to Chammah on these claims.

3. Direct Violations of § 10(b) and Rule 10b-5
In order to establish a violation of § 10(b) and Rule 10b-5 a plaintiff must prove: "(1) a misrepresentation of or failure to disclose a material fact, (2) made in connection with the purchase or sale of any security, (3) with scienter, (4) reliance by the plaintiff ..., (5) and a loss caused thereby." Manela v. Garantia Banking Ltd., 5 F.Supp.2d 165, 172 (S.D.N.Y.1998), citing In re Time Warner Inc. Sec. Lit., 9 F.3d 259, 264 (2d Cir.1993). Raising challenges to Plaintiffs' proof regarding several of these elements, Hirsh argues that the § 10(b) and Rule 10b-5 claims must be dismissed. For the reasons outlined below, the Court disagrees.

a. Materiality
Information is material under securities laws if "there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [invest]." Basic Inc., v. Levinson, 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). A tip does not have to be certain before it is material, as long as "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the `total mix' of information made available." Id. Recognizing that it might be difficult to determine the materiality of "contingent or speculative information or events," id. at 238, 108 S.Ct. 978, the Supreme Court has held that "materiality `will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'" Id., quoting SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2d Cir.1968); see also United States v. Cusimano, 123 F.3d 83, 88 (2d Cir.1997). Consequently "[w]hether merger discussions in any particular case are material therefore depends on the facts," Basic, Inc. v. Levinson, 485 U.S. at 238, 108 S.Ct. 978.
Hirsh claims that the information he received from Sanker was not material because it was false and vague, the source was both remote and unknown, and the "tippers" were inherently unreliable. He argues that neither Harris nor Sanker had any business experience, and, since they *240 were unable to disclose either the name of the acquiring company or the name of the insider, their information amounted to nothing more than a rumor. He asserts that every verifiable fact given Hirsh by Sanker was proven false, including the price, the date of the proposed takeover and the identity of the source inside Motel 6, and he characterizes Sanker's information as too general to be considered material.[12] "To a reasonable investor, rumors filtered through such intermediaries are inherently unreliable." Hirsh's Mem. in Supp. at 22.
Plaintiffs counter that the information Sanker passed along was, to a large part, true, and, since it concerned tender offer negotiations, it was highly material. They further note that courts only find information to be immaterial if it is obviously so. See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985) (Summary judgment on the ground that an omission is immaterial is inappropriate unless the omission is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."). Information regarding impending mergers does not need to be specific or detailed in order to be material, see SEC v. Mayhew, 121 F.3d 44, 52 (2d Cir.1997), and a reasonable jury, using the probability/magnitude balancing test adopted by the Supreme Court in Basic Inc. v. Levinson, 485 U.S. at 238, 108 S.Ct. 978, could find that a reasonable investor would view Sanker's disclosures as "having significantly altered the `total mix' of information made available," id. at 231, 108 S.Ct. 978
Plaintiffs further argue that Hirsh's position is undercut by his own behavior, pointing to facts which provide strong circumstantial evidence that Hirsh himself found Sanker credible. Hirsh allegedly invested in Motel 6 within a week of Sanker's disclosure, repeatedly calling Sanker to check on the status of the negotiations; he even agreed to pay Sanker a portion of his profits and then attempted to disguise the kickbacks once the Commission investigation was underway. See Pls.' 56.1(b) Stmt. ¶¶ 34-35, 40,42. Hirsh doesn't explain why he paid a supposedly disreputable source a substantial amount of money for unreliable information which he asserts he did not use. A reasonable jury could infer not only that the information was material, but also that Hirsh found it material. Accordingly, summary judgment would not be appropriate on the issue of materiality.

b. Scienter
Under § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, the Plaintiff must prove that (1) Thrasher breached a fiduciary duty when he disclosed information about the Accor/Motel 6 negotiations to Harris, and (2) that Hirsh knew or should have known that the information was disclosed in violation of a fiduciary duty. See Dirks v. SEC, 463 U.S. 646, 659, 662, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983); see also Chiarella v. United States, 445 U.S. 222, 228, 231 n. 12, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). Hirsh maintains that Plaintiffs cannot prove either. The Court disagrees.
"[W]hether disclosure is a breach of duty ... depends in large part on the purpose of the disclosure ... Thus, the *241 test is whether the insider will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach of duty to stockholders." Dirks v. SEC, 463 U.S. at 662, 103 S.Ct. 3255. "Such benefit can derive from the insider's use of the information to secure a `pecuniary gain,' a `reputational benefit that will translate into future earnings,' or simply to confer `a gift of confidential information to a trading relative or friend.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 312, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985), citing Dirks v. SEC, 463 U.S. at 663-664, 103 S.Ct. 3255. In arguing that Thrasher did not breach his fiduciary duty by disclosing information about the Accor tender offer to Harris, Hirsh does not even attempt to show that there are no factual disputes regarding Thrasher's motive for the disclosure; he merely identifies evidence that could support a finding that Thrasher did not intend to benefit his friend Harris by telling him about the negotiations. See Hirsh Mem. in Supp. at 24-25. Hirsh argues that Thrasher had no reason to think either that Harris was trading or that he would trade, and points to Thrasher's reluctance to speak about the negotiations as proof that he did not desire to help Harris profit illegally from the information.
None of the facts cited by Hirsh, however, refutes Plaintiffs' allegations that Thrasher, who had been supporting Harris, revealed information regarding Motel 6 in order to benefit his dying friend, thus breaching his fiduciary duty. In their Statement of Material Facts Plaintiffs have identified facts on the record which could lead a reasonable jury to determine that Thrasher, a sophisticated businessman, knew what he was doing when he revealed to Harris confidential information about the proposed tender offer, and that he likewise knew that Harris could make money by trading on that information without knowing every detail of the ongoing negotiations. See Pls.' 56.1(b) Stmt. at ¶¶ 1-6. Since a reasonable jury would not be compelled to adopt Hirsh's interpretation of the facts on the record, summary judgment for Hirsh is not appropriate. As the Second Circuit has noted, "[d]etermining whether an insider personally benefits from a particular disclosure, a question of fact, will not always be easy for courts." Dirks, at 664, 103 S.Ct. 3255. In this case, that determination is properly left for the jury.
In order to prove liability under § 10(b) and Rule 10b-5 Plaintiffs must also prove that Hirsh knew or should have known that Thrasher breached his fiduciary duty when he disclosed material, nonpublic information to Harris. "The tippee's obligation has been viewed as arising from his role as a participant after the fact in the insider's breach of a fiduciary duty." Chiarella v. United States, 445 U.S. 222, 231 n. 12, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980); see also Dirks, 463 U.S. at 659, 103 S.Ct. 3255 ("[A] tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach."); U.S. v. Chestman, 947 F.2d 551, 565 (2d Cir.1991) (same). The Plaintiff does not have to prove, however, that remote tippees knew for certain how the initial breach of fiduciary duty occurred. In SEC v. Musella, 678 F.Supp. 1060 (S.D.N.Y.1988), the court found that there was no issue of material fact regarding the defendants' scienter even though the defendants did not even *242 know who the insiders were. Id. at 1062.[13] It was enough that circumstantial evidence showed that the defendants "should have known that fiduciary duties were being breached with respect to confidential, nonpublic information." Id. at 1063; see also, SEC v. Sekhri, 1998 WL 259932 at *2, 1998 U.S. Dist. LEXIS 7490 at *6 (S.D.N.Y. 1998) (noting that "it is not necessary to establish a direct link to the original tipper").
Hirsh contends that, even if Thrasher breached his fiduciary duty, Hirsh had no way of knowing of that breach. Among other things, Hirsh argues that he was an outsider and couldn't know what was public information or not. According to Hirsh, he checked out Sanker's information and learned immediately that it was false. Since Sanker and Harris were unreliable sources, and given the fact that there was widespread public discussion of a Motel 6 tender offer, Hirsh asserts that it was reasonable for him to believe what he was told was not from an insider. He further contends that the pattern of his trades in Motel 6 options, closely following price and volume spikes, illustrates that he did not trade on the basis of inside information.
Plaintiffs counter that Hirsh knew that Sanker's information was privileged, inside information because that is what Sanker told him. See Pls.' 56.1(b) Stmt. ¶¶ 20. Further, they assert that Hirsh told Sanker that he would use his broker Odwak to hide the fact that the information came from Sanker, id. ¶ 23, something Hirsh denies. This factual dispute alone is enough to defeat Hirsh's motion for summary judgment. In addition, a defendant's subjective belief that information received "was obtained in breach of a fiduciary duty ... may ... be shown by circumstantial evidence," United States v. Mylett, 97 F.3d 663, 668 (2d Cir.1996); see also SEC v. Musella, 578 F.Supp. 425, 441 (S.D.N.Y.1984) (same), and Plaintiffs have identified circumstantial evidence that Hirsh not only believed Sanker's information was true, but also that he knew that it was privileged inside information. Plaintiffs allege that Hirsh agreed to pay Sanker a portion of his profits from Motel 6 trades, finally paying him $13,500 in two payments; they further assert that Hirsh, in order to cover his illegal trades, urged Harris to lie to the SEC about those payments. Pls.' 56.1(b) Stmt. ¶¶ 21, 40, 42, 44-45. A reasonable jury could find, based on these facts, that Hirsh knew that the information Sanker passed to him was privileged inside information obtained in a breach of fiduciary duty. Summary judgment, therefore, is not appropriate.

c. Causation and Reliance
In order to establish liability under § 10(b) or Rule 10b-5, Plaintiffs must prove at trial that their alleged losses were, in fact, caused by Defendants' allegedly illegal trades. See Manela v. Garantia Banking Ltd., 5 F.Supp.2d 165, 172 (S.D.N.Y.1998). Hirsh argues that Plaintiffs have failed to prove causation, relying in part on an affidavit by Mark Duffy ("Duffy"), submitted with Hirsh's Motion papers. (During discovery, Duffy prepared an expert report for Hirsh and was deposed by Plaintiffs). Plaintiffs argue that Duffy's affidavit should be stricken, pursuant to Federal Rule of Civil Procedure 37, since in it he expresses opinions which were not disclosed during discovery.[14]See Pls.' Mem. in Opp. at 10 (noting *243 that Duffy merely stated that he would offer an opinion if and when he was provided with the necessary facts). Plaintiffs have also appended an Emergency Motion for Sanctions as Exhibit 1 to their Memorandum in Opposition. Hirsh does not dispute that Duffy's affidavit contains evidence beyond the scope of his expert report, but argues that preclusion is generally disfavored and would be unduly prejudicial in this case. See Hirsh's Reply Mem. at 10.
Rule 37 mandates that a party is precluded from using evidence which was not properly disclosed during discovery. See Lamarca v. United States, 31 F.Supp.2d 110, 122 (W.D.N.Y.1998). "This result is `self executing' and is an `automatic sanction' that is designed to provide a strong inducement for disclosure of relevant material that the disclosing party expects to use as evidence." Fund Comm'n Service, II, Inc. v. Westpac Banking Co., 93 Civ. 8298, 1996 WL 469660 at *3 (S.D.N.Y. Aug. 16, 1996) (citations omitted). In Softel, Inc. v. Dragon Medical and Scientific Communications, Inc., 118 F.3d 955, 963 (2d Cir.1997), the Second Circuit held that a party was precluded from using testimony from an expert who failed to produce an expert report by the court-imposed deadline. The Court considered four factors in making its determination: "(1) the party's explanation for the failure to comply ..., (2) the importance of the testimony of the precluded witness, (3) the prejudice suffered by the opposing party ...; and (4) the possibility of a continuance." Id. at 961 (citing Outley v. City of New York, 837 F.2d 587, 590 (2d Cir.1988)). Applying these factors, this Court determines that the Duffy affidavit should be stricken.
First of all, Hirsh's explanation for the incomplete nature of Duffy's report is unconvincing. Hirsh maintains that Plaintiffs are to blame since they "stonewalled Hirsh's discovery requests, and hid the fact that they were market makers." Hirsh's Reply Mem. at 10. Even assuming that Plaintiffs were uncooperative, Hirsh learned of Plaintiffs' delta neutral trading strategy well before the end of discovery,[15] and Hirsh made no motion to amend his expert's report. Furthermore, Hirsh was on notice from the outset of these proceedings that one of the Plaintiffs, Hull Trading, was a market maker.
Regarding the second factor, Hirsh argues that Duffy's Affidavit is not merely important but indispensable to his case. Plaintiffs have argued, however, that Duffy is incorrect in his assessment of possible losses under a "delta neutral" trading strategy and contest Defense assertions that Plaintiffs intended to maintain a true "delta neutral" position; they have filed an expert affidavit by James Lodas supporting their position. Since all reasonable inferences must be drawn in favor of the non-movant, see Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990), Plaintiffs have identified sufficient factual disputes to survive a motion for summary judgment, even if the Duffy Affidavit were not to be stricken.
*244 Hirsh further argues that the third Outley factor favors admitting Duffy's Affidavit, maintaining that Plaintiffs weren't prejudiced by the lack of disclosure because they could "try to explain the trading strategy themselves." Hirsh Reply Mem. at 10. This argument ignores the fact that Plaintiffs were not able to depose Duffy regarding his newly asserted opinions, nor were they able to challenge his qualifications to opine on delta neutral trading strategies. Plaintiffs clearly would be prejudiced if this Court were to accept the Duffy Affidavit. Similarly, it would not have helped Plaintiffs to get a continuance since discovery in this case is closed and a delay, while it would have given Plaintiffs time to get another expert, would not have afforded them the opportunity to depose Duffy. Therefore, since all four Outley factors favor preclusion, the Duffy Affidavit must be stricken.
Hirsh maintains, however, that the Duffy Affidavit is not necessary to demonstrate that Plaintiffs cannot prove causation, since Plaintiffs didn't rely on the Defendants' alleged misrepresentations. In cases of non-disclosure, however, "materiality rather than reliance ... becomes the decisive element of causation," 239. Titan Group Inc. v. Faggen, 513 F.2d 234, 239 (2d Cir.1975). The Supreme Court has held that reliance is not a prerequisite for recovery under securities laws as long as "the facts withheld [were] material in the sense that a reasonable investor might have considered them important." Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); see also Pollack v. Laidlaw HOldings, Inc., 90 Civ. 5788(DLC), 1995 WL 261518 at *11 (S.D.N.Y. May 3, 1995). If materiality is established, reliance is presumed, and, while the presumption of reliance is rebuttable, in order to rebut the presumption defendants must prove, as Hirsh has been unable to do, that "disclosure of [the material, nonpublic] information would not have altered the plaintiff's investment decision." duPont v. Brady, 828 F.2d 75, 78 (2d Cir.1987); see also Manela v. Garantia Banking Ltd., 5 F.Supp.2d 165, 172 (S.D.N.Y.1998).
This Court has already determined that Plaintiffs have identified sufficient facts to survive a motion for summary judgment on the issue of materiality. Hirsh argues, however, that, as market makers trading on the Chicago Board Options Exchange ("CBOE"), Plaintiffs cannot show that they would not have traded had they known of the inside information, since they are obligated to sell call options to all purchasers. See Hirsh's Reply Mem. at 6. Plaintiffs counter that they incurred losses by selling options at a price that did not reflect the inside information that the Defendants' possessed. Indeed, as Plaintiffs point out, Hirsh's alleged plan depended upon the fact that he would buy Motel 6 options at a deflated price. Hirsh concedes that under CBOE Rules Plaintiffs were generally required to trade at the market price, see Hirsh's Reply Mem. at 7. Since a reasonable jury could find that proper disclosure of the alleged inside information would have changed the market price, Hirsh has failed to rebut the presumption of reliance.
In a related argument, Hirsh maintains that Plaintiffs' insider trading claim is inapplicable to market-makers, since they cannot establish privity. He does not cite a single case that supports this position, however. Under Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228, 236-37 (2d Cir.1974), no privity is required as long as the trades occur contemporaneously, and Plaintiffs have identified facts which support their contention that they traded contemporaneously *245 with Hirsh. Therefore Hirsh's argument has no merit.[16]
Furthermore, Hirsh argues that Plaintiffs are not entitled to consequential damages, citing Elkind v. Liggett & Myers, 635 F.2d 156, 170 (2d Cir.1980). While Plaintiffs are generally entitled to consequential damages in securities fraud cases, see The Limited, Inc. v. McCrory Corp., 683 F.Supp. 387, 393 (S.D.N.Y.1988), citing Zeller v. Bogue Elec. Mfg. Corp., 476 F.2d 795, 803 (2d Cir.1973), it is not necessary to reach that issue at this time since Plaintiffs need only show that they are entitled to some relief in order to defeat a motion for summary judgment. See The Limited, Inc. v. McCrory Corp., 683 F.Supp. at 393. The determination of the scope of damages is properly left to the trier of fact.

4. § 14(e) of the Exchange Act and Rule 14e-3

In order to establish a violation under § 14(e) of the Exchange Act and Rule 14e-3 promulgated thereunder, Plaintiffs must find that the Hirsh traded in securities "while in possession of material, nonpublic information which he did not disclose and which he knew or should have known had been acquired `directly or indirectly' from an insider of the offeror or issuer, or someone working on their behalf." United States v. Chestman, 947 F.2d 551, 557 (2d Cir.1991) (en banc). In addition, Plaintiffs must prove that "a `substantial step' had been taken toward a tender offer at the time of the inside trading, but there is no requirement to show that [the insider] breached a fiduciary duty." SEC v. Warde, 151 F.3d 42, 47 (2d Cir.1998); see also United States v. O'Hagan, 521 U.S. 642, 676, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997); SEC v. Mayhew, 121 F.3d 44, 49 (2d Cir.1997); SEC v. Falbo, 14 F.Supp.2d 508, 527 (S.D.N.Y.1998).[17] With the exception of the "substantial step" requirement, Hirsh's potential liability under all of the elements of § 14(e) and Rule 14e-3 liability has already been discussed in terms of the § 10(b) and Rule 10b-5 claims; for the reasons noted above this Court finds that genuine issues of material fact remain regarding each of these elements. Since Hirsh does not allege the absence of material factual disputes regarding whether a "substantial step" was taken towards a tender offer at the time he invested in Motel 6, this Court must deny Hirsh's Motion for Summary Judgment on the § 14(e) and Rule 14e-3 claims.

E. RICO Claims

1. General RICO Liability
In order to establish a violation of RICO statute 18 U.S.C. § 1962 a plaintiff must *246 show that "(1) that the defendant (2) through the commission of two or more acts (3) constituting a `pattern' (4) of `racketeering activity' (5) directly or indirectly invests in, or maintains an interest in or participates in (6) an `enterprise' (7) the activities of which affects interstate or foreign commerce." Kashelkar v. Rubin & Rothman, 97 F.Supp.2d 383, 391 (S.D.N.Y. 2000) (citation omitted). A civil plaintiff must also prove that he has been "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1962(c). Hirsh raises numerous challenges to Plaintiffs' proof of these elements.

a. Standing
Hirsh argues first that Plaintiffs do not have standing to raise RICO claims because they cannot prove the requisite reliance or causation. See Hirsh's Mem. in Supp. at 13-14. Plaintiffs have identified genuine issues of material fact regarding reliance and causation, however, see discussion § III.A.3.c. supra, so summary judgment is not warranted on this issue. Hirsh argues, as he did in an earlier motion, that RICO claims require actual reliance, see id., but this Court has already held that there is no actual reliance requirement for § 10(b) omission claims pleaded as predicate acts in RICO actions, and has declined to impose one. See In re Motel 6 Sec. Lit., 93 Civ. 2183(JFK), 1997 WL 154011 at *3 (S.D.N.Y. Apr. 2, 1997).

b. Continuing Enterprise
In an earlier Motion to Dismiss, Hirsh unsuccessfully argued that Plaintiffs had not stated a RICO claim against him because they failed to allege that he engaged in two predicate acts which represented a threat of continuity. See In re Motel 6 Sec. Lit., 93 Civ. 2183(JFK), 1997 WL 154011 at *4 (S.D.N.Y.1997). He repeats that claim now, arguing, among other things, that "[a] scheme related to a single transaction ... does not entail RICO continuity," Hirsh's Mem. in Supp. at 5, and that, as a matter of law, allegations regarding a cover-up cannot provide continuity. See Thai Airways Intl. Ltd. v. United Aviation Leasing B.V., 842 F.Supp. 1567, 1573 (S.D.N.Y.1994).
On a Motion for Summary Judgment the Court must draw all inferences in favor of the non-movant, see Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir.1990), but the party opposing the motion must identify facts on the record to support their assertions. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Since this Court has already found that the Plaintiffs have "adequately pleaded a pattern of racketeering activity by Hirsh," In re Motel 6 Sec. Lit., 93 Civ. 2183(JFK), 1997 WL 154011 at *4 (S.D.N.Y.1997), Plaintiffs need only identify facts on the record to support their allegations in order to survive a motion for summary judgment.[18]
Plaintiffs have met this burden. Plaintiffs note that from the start of the conspiracy, Hirsh agreed with Sanker to disguise the illegal trades by manufacturing a paper trail which would mislead authorities into thinking that it was Odwak's advice, not Sanker's inside information, that prompted Hirsh's interest in Motel 6. Plaintiffs further assert that Hirsh continues *247 that cover-up attempt today. See Pls.' 56.1(b) Stmt. ¶ 22.[19] Plaintiffs have also cited facts to support allegations that Hirsh engaged in insider trading, extended the conspiracy by disseminating the inside information to others, engaged in a coverup of those illegal activities, furthered the goal of the conspiracy through his payments to Sanker and urged Sanker to commit perjury. Id. at ¶ 22-27, 30-31, 38, 40, 44-46. This Court has already held that these allegations reflected the requisite pattern of racketeering activity. Therefore Plaintiffs have identified sufficient issues of material fact to survive a summary judgment motion on this issue.
In addition, a RICO enterprise must have "an ongoing organization" and an existence "apart from the pattern of activity in which it engages," U.S. v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), but a party may prove an enterprise through evidence of an ongoing formal or informal organization. See id. While it is true that Plaintiffs allege only the slimmest connection between Hirsh and several of his co-defendants, Plaintiffs have identified facts on the record supporting their contention that Hirsh participated in a continuing criminal enterprise with Sanker, Rosenblatt and Odwak and that this enterprise "functioned as a unit." First Nationwide Bank v. Gelt Funding Corp., 820 F.Supp. 89, 98 (S.D.N.Y.1993), aff'd, 27 F.3d 763 (2d Cir.1994) (citation omitted).[20] Consequently, summary judgment is not warranted on this issue.

2. § 1962(b)
As this Court has held in a related case, "[t]o state a claim under § 1962(b), a plaintiff must plead that they were injured by a defendants' acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or commission of predicate acts." Redtail Leasing v. Bellezza, 1997 WL 603496 at *3 (S.D.N.Y. Sep. 30, 1997); see also Dornberger v. Metropolitan Life Ins. Co., 961 F.Supp. 506, 525 (S.D.N.Y.1997) ("[T]he essence of a § 1962(b) violation is not the commission of predicate acts, but rather the acquisition or maintenance of an interest in or control of an enterprise ... Thus, a plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance in or control of an enterprise."). If a plaintiff is solely injured as a result of predicate acts, his sole RICO remedy is under § 1962(c). As in Bellezza, Plaintiffs here have not alleged facts showing acquisition injuries and therefore they cannot maintain a claim under § 1962(b). See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 657 (S.D.N.Y.1996).[21]

3. § 1962(c)
18 U.S.C.1962(c) states that: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, *248 in the conduct of such enterprise's affairs through a pattern of racketeering activity." The Supreme Court has held that, "[i]n order to `participate, directly or indirectly, in the conduct of such an enterprise's affairs,' one must have some part in directing those affairs." Reves v. Ernst & Young, 507 U.S. 170, 180, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Hirsh maintains that he did not have a part in directing the alleged enterprise's affairs, especially since he was unaware of the existence of the broader enterprise, and so Plaintiffs cannot establish a claim under § 1962(c).
Plaintiffs counter that they have identified facts which indicate that Hirsh did exert a degree of control over the enterprise, and note that the Second Circuit has held that, "[u]nless a Civil RICO defendant is indisputably directing the affairs of the enterprise, his commission of crimes that advance its objectives must be assessed by a fact-finder to determine whether or not his criminal activity, assessed in the context of all the relevant circumstances, constitutes participation in the operation or management of the enterprise's affairs." United States v. Allen, 155 F.3d 35, 42 (2d Cir.1998). As the Allen Court noted, courts have differed widely in their assessments of whether defendants' alleged criminal activities constitute participation in the enterprise. See id. Such factual determinations, following Allen, should in many cases be made by the jury.
This Court dismissed § 1962(c) claims brought by Plaintiffs in a related case after finding that allegations against the Defendants were not sufficient to establish that the Defendants had a "role in managing or directing the enterprise's affairs." Redtail Leasing v. Bellezza, 95 Civ. 5191(JFK), 1999 WL 32941 at *5 (S.D.N.Y. Jan. 22, 1999); see also Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L., 832 F.Supp. 585, 592 (E.D.N.Y.1993).[22] This Court has also determined that Defendant Chammah is entitled to summary judgment on Plaintiffs' § 1962(c) claim since Plaintiffs made no factual showing that Chammah directed any part of the alleged enterprise's affairs. See discussion § II.D.2. supra. Plaintiffs' allegations regarding Hirsh's participation are more compelling, however. Plaintiffs' maintain that Hirsh concocted the scheme to establish that Odwak was the source of his interest in Motel 6, brought Rosenblatt and Odwak into the conspiracy, paid Sanker for the inside information and directed Sanker to perjure himself rather than reveal the true reason behind the payments. Pls.' 56.1(b) Stmt. ¶¶ A reasonable jury could conclude on the basis of these facts that Hirsh had a part in managing the criminal enterprise's affairs, especially since, under Reves, even "lower rung" participants can be held liable. See Reves v. Ernst & Young, 507 U.S. at 184, 113 S.Ct. 1163. Accordingly, Hirsh's Motion for Summary Judgment on Plaintiffs' § 1962(c) claim is denied.

4. § 1962(d)
18 U.S.C. § 1962(d) states simply that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." It is not necessary that Plaintiffs allege a substantive RICO violation in order to prove liability for conspiracy, see Salinas v. United States, 522 U.S. *249 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (holding that under § 1962(d) there is "no requirement of some overt or specific act ... unlike the general conspiracy provision applicable to federal crimes,"), and the conspirator need not agree to commit the predicate acts himself, but he must agree to further the aim of the conspiracy. See Salinas v. United States, 522 U.S. at 63-64, 118 S.Ct. 469; see also United States v. Sessa, 125 F.3d 68, 71 (2d Cir. 1997).
This Court has already dismissed § 1962(d) claims in a case related to the case at bar where Plaintiffs made "no more than conclusory allegations" that moving Defendants agreed to violate § 1962(b) or (c). Redtail Leasing v. Bellezza, 95 Civ. 5191(JFK), 1999 WL 32941 at *6 (S.D.N.Y. Jan. 22, 1999). Similarly, this Court has granted Defendant Chammah's Motion for Summary Judgment on Plaintiff's § 1962(d) claims, see discussion § II.D.3., supra, and Hirsh argues that the conspiracy claim against him should be dismissed for the same reason. See Hirsh's Reply Mem. at 4. Hirsh also argues that, "[s]ince the facts pertaining to Hirsh do not constitute a RICO pattern, there was no RICO conspiracy." Hirsh's Mem. in Supp. at 12. Hirsh's arguments are unconvincing.
First of all, unlike Plaintiffs' allegations against Defendant Chammah, Plaintiffs' allegations that Hirsh entered into an agreement to further the aims of the conspiracy are not merely conclusory. This Court has already held that Plaintiffs' factual allegations sufficiently supported a conspiracy claim against Hirsh. See In re Motel 6 Sec. Lit., 93 Civ. 2183, 1997 WL 154011 at *15 (S.D.N.Y. Aug. 1, 1995). Now Plaintiffs have supported those allegations by citing facts on the record which indicate that Hirsh made several agreements with his alleged co-conspirators in furtherance of the conspiracy, including, inter alia, Hirsh's agreement with Sanker to trade using the information he disclosed and share the profits, Hirsh's agreement with Rosenblatt to trade illegally in Motel 6 options and split the proceeds, Hirsh's agreement with Sanker and Odwak to disguise the true illegal impetus for the Motel 6 trades, and Hirsh's agreement with Sanker that Sanker should commit perjury before the SEC. Pls.' 56.1(b) Stmt. ¶¶ 21-24, 30-31, 40, 42, 44-47. Drawing all inferences in favor of the non-movant, the Court finds that there are genuine issues of fact regarding whether Hirsh violated § 1962(d); therefore Hirsh's Motion for Summary Judgment on that claim is denied.

CONCLUSION
For the foregoing reasons, Defendant Chammah's Motion for Summary Judgment is granted with respect to Plaintiffs' conspiracy claims, claims for control person violations and aiding and abetting under §§ 10(b) and 14(e) of the Securities Exchange Act of 1934 and Rules 10b-5 and 14e-3 promulgated thereunder, claims for violations of §§ 18 U.S.C.1962(b) and (c), and claims for Common Law Fraud and Unjust Enrichment. Chammah's Motion is denied with respect to the Plaintiffs' claims for direct violations of §§ 10(b) and 14(e) and Rules 10b-5 and 14e-3 promulgated thereunder. Chammah has also moved for Judgment on the Pleadings regarding claims for wire fraud and the Interstate and Foreign Travel Act. Since no such claims were brought by the Plaintiffs this Motion is dismissed as moot.
Defendant Hirsh's Motion for Summary Judgment is granted with respect to claims for control person violations, aiding and abetting and conspiracy under §§ 10(b) and 14(e) of the Securities Exchange Act of 1934 and Rules 10b-5 and *250 14e-3 promulgated thereunder, and for violation of § 18 U.S.C.1962(b). Hirsh's Motion is denied with respect to claims for direct violations of §§ 10(b) and 14(e) and Rules 10b-5 and 14e-3, and for violations of 18 U.S.C. §§ 1962(c) and (d).
All parties are directed to contact Magistrate Judge Dolinger as soon as possible for the purpose of scheduling a settlement conference. Should the case not be resolved through settlement, the parties are hereby given a Ready for Trial date of October 1, 2001. A copy of this Court's Pre-trial Requirements will be forwarded to the parties with this Opinion. Plaintiffs' counsel is instructed to notify all remaining defendants of this Order.
SO ORDERED.
NOTES
[1] The two men were good friends, and Thrasher had been supporting Harris, who was dying of AIDS, giving him gifts and sending him $1000 per month. Pls.' 56.1(b) Stmt. in Opp. to Hirsh's Mot. ¶ 1.
[2] Plaintiffs' claim for violation of the New York Consumer Protection Act was dismissed against all parties; Common Law Fraud and Unjust Enrichment claims have been dismissed against Hirsh. See In re Motel 6 Sec. Lit., 93 Civ. 2183(JFK), 1995 WL 431326 (S.D.N.Y. July 5, 1995); 1997 WL 154011 (S.D.N.Y. Aug. 1, 1997). [Note: the Court issued the opinion on July 5, 1995. The Westlaw cite incorrectly indicates that the opinion was issued on July 20, 1995].
[3] Pursuant to the Consent Order, Chammah was required to pay the sum of $206, 542.51, "representing disgorgement of profits in the amount of $127,098.09 ... plus prejudgment interest." Chammah's Mem. in Supp., Ex. 1 at 4.
[4] Plaintiffs note that the Final Judgment does not state that the amount it required Chammah to disgorge constituted the full amount of Chammah's illegal profits. See Pl.'s 56.1(b) Stmt. ¶ 19-20.
[5] Plaintiffs assert that they are no longer pursuing claims for aiding and abetting under § 10(b) and Rule 10b-5. See Pls.' Mem. in Opp. to Chammah's Mot. at 5 n. 6.
[6] Plaintiffs argue that the Dinsmore court didn't read Central Bank correctly, preferring the reasoning of a District Court in Utah which held that it was possible to maintain a conspiracy action under § 10(b), see Wenneman v. Brown, 49 F.Supp.2d 1283 (D.Utah 1999), but they acknowledge that Dinsmore is binding precedent and raise the issue merely to preserve their record on appeal.
[7] While this Court has not found any cases assessing whether aiding and abetting liability under § 14(e) survives after Central Bank, Courts have applied the Supreme Court's reasoning in RICO cases, determining that without express statutory authorization, plaintiffs cannot bring aiding and abetting claims under RICO statutes. See Goldfine v. Sichenzia, 118 F.Supp.2d 392, 406 (S.D.N.Y.2000), citing Dept. of Econ. Dev. v. Arthur Andersen & Co., 924 F.Supp. 449, 475-78 (S.D.N.Y.1996); see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 2000 WL 1694308 (S.D.N.Y. Nov. 9, 2000), citing Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corp, No. 96 Civ.2050, 1995 WL 43669 at *4-5 (S.D.N.Y. Feb. 2, 1995).
[8] Plaintiffs do not concede that Chammah has, in fact, disgorged his profits from the illegal trading. See discussion Section II.C.1 supra.
[9] Chammah cites Reves v. Ernst & Young, 507 U.S. 170, 177-79, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), noting that the Reves Court held that "defendant must take part in the `operation or management' of the enterprise" in order to be liable. Chammah Mem. in Supp. ¶ 18. As Plaintiffs point out, however, this language in Reves applies to liability under § 1962(c), not (b).
[10] "A plaintiff who is injured solely as a result of predicate acts may sue only under § 1962(c), `whose essence is the commission of predicate acts in connection with conducting the affairs of an enterprise.'" Bellezza at *3, quoting Dornberger at 525.
[11] Hirsh also seeks the dismissal of RICO aiding and abetting claims, see Hirsh's Mem. in Supp. at 20, but, since no such claims have been asserted, that motion is moot.
[12] Hirsh cites U.S. v. Mylett, 97 F.3d 663, 667 (2d Cir.1996), in which the Second Circuit noted that "[i]t may well be that insider trading has not occurred ... in situations in which an insider has made categorical statements that are completely without foundation and these are used successfully by a trader." Id. (emphasis added). Since Hirsh has not demonstrated that Sanker's tips were "completely without foundation," Mylett does not apply.
[13] Since remote tippees need not know the identity of the original source of the inside information in order to be liable, Hirsh's argument that he should be granted summary judgment regarding the trades he made before learning Thrasher's identity has no merit.
[14] Rule 37 states, in relevant part: "A party that without substantial justification fails to disclose information required ... is not ... permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37.
[15] Hirsh made a similar assertion in his application to extend discovery back in 1996. At that time Magistrate Judge Dolinger noted, while granting a limited extension, that Hirsh had learned of the Plaintiffs' market maker status in June of that year, see In re Motel 6 Sec. Lit., 93 Civ. 2183(JFK), 1996 U.S. Dist. LEXIS 12958 at *2-3 (S.D.N.Y. Sep. 5, 1996), over two months before discovery was scheduled to close.
[16] Plaintiffs' showing of contemporaneous trading also defeats Hirsh's argument that, as a matter of law, Plaintiffs are not entitled to recover for losses during the Class Period. See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228, 236-37 (2d Cir. 1974). Hirsh's argument that summary judgment is proper as to purchases on July 3rd and 5th, since "this was the most risky of the entire May-July period" also has little weight. Hirsh's Mem. in Supp. at 24. Since a reasonable jury, using the probability/magnitude balancing test adopted by the Supreme Court in Basic Inc., v. Levinson, 485 U.S. at 238, 108 S.Ct. 978, could find that a reasonable investor would view disclosure of tender offer negotiations as "having significantly altered the `total mix' of information made available," id. at 231, 108 S.Ct. 978, even at those junctures when negotiations seemed likely to break down.
[17] As the Second Circuit held in Chestman, "Rule 14e-3(a) is a disclosure provision. It creates a duty in those traders who fall within its ambit to abstain or disclose, without regard to whether the trader owes a pre-existing fiduciary duty to respect the confidentiality of the information." Chestman, 947 F.2d at 557.
[18] In an earlier decision denying Motions to Dismiss by Defendant Chammah and others, this Court determined that Plaintiffs adequately pleaded the existence of a "continuing conspiracy to conduct illegal acts to obscure and to obstruct any investigation of the alleged tipping and trading on inside information pertaining to the Accor tender offer [which satisfied] the pattern of activity pleading requirement of §§ 1962(b) and (c)," In re Motel 6 Sec. Lit., 93 Civ. 2183(JFK), 1995 WL 431326 at *5 (S.D.N.Y. July 5, 1995).
[19] Hirsh argues inexplicably that Plaintiffs can't use his continued insistence that he relied on Odwak's advice in deciding to invest in Motel 6 options to prove continuity, because "[o]therwise, any defendant's asserted reliance on his counsel or another professional would subject him to RICO." Reply 1. Plaintiffs do not allege that Hirsh's reliance on Odwak subjects him to liability, but rather that his claim to have relied was an attempt to cover up illegal activity.
[20] Plaintiffs do not, as Hirsh asserts, concede that RICO can't apply to Sanker, Rosenblatt, Hirsh and Odwak alone. See Pls.' Mem. in Opp. at 15 n. 16.
[21] Plaintiffs disagree with this Court's reasoning in Redtail Leasing, Inc. v. Bellezza, 1997 WL 603496 at *3 (S.D.N.Y.1997), and preserve their right to appeal this issue.
[22] Plaintiffs in Bellezza alleged that various defendants passed on inside information to others, traded on inside information, received kickbacks for illegal trades, evaluated the inside information, requested additional material to assess the inside information, and advised other members regarding how to respond to a possible government investigation. See Redtail Leasing v. Bellezza, 95 Civ. 5191(JFK), 1999 WL 32941 at *5 (S.D.N.Y. Jan. 22, 1999).